Gregory N. Karasik (SBN 115834)
**Karasik Law Firm**
16021 Aiglon St.
Pacific Palisades, CA 90272
Tel (310) 463-9761
Fax (310) 943-2582
greg@karasiklawfirm.com

Santos Gomez (SBN 172741)
**Law Offices of Santos Gomez**
1003 Freedom Boulevard
Watsonville, CA 95076
Tel (831) 228-1560
Fax (831) 228-1542
santos@lawofficesofsantosgomez.com

Attorneys for Plaintiff
JOSE MARIO MENDOZA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MARIO MENDOZA,<br><br>Plaintiff,<br><br>vs.<br><br>TRANS VALLEY TRANSPORT et al,<br><br>Defendants.<br>_____<br><br>And Related Cross-Action | Case No. 22-cv-07164 TLT<br><br>**NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: October 3, 2023<br>Time: 2:00 p.m.<br>Ctrm: 9 (via Zoom) |

Please take notice that, on October 3, 2023, at 2:00 p.m. or as soon thereafter as counsel may be heard, in Courtroom 9 of the San Francisco Courthouse for the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, California, plaintiff Jose Mario Mendoza ("Plaintiff") will and hereby does move for an order granting preliminary approval of the class action settlement (the "Settlement") reached with defendants Trans Valley Transport and FTU Labor Contractors, Inc. ("Defendants"). Specifically, Plaintiff moves for an order:

1) preliminarily finding, for the purposes of giving members of the Settlement Class notice of the Settlement and the opportunity to request exclusion from the Settlement or object to the Settlement, that:

a) the Settlement Class, comprised of all persons who worked as truck drivers for Trans Valley Transport and/or FTU Labor Contractors, Inc. at any time between May 26, 2011 and February 28, 2015 who did not enter into arbitration agreements, meets all the requirements for class certification under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; and

b) the Settlement is fair, reasonable and adequate under Rule 23(e)(2) of the Federal Rules of Civil Procedure.

2) appointing Plaintiff as representative for the Settlement Class.

3) appointing Gregory N. Karasik of Karasik Law Firm, and Santos Gomez of Law Offices of Santos Gomez as counsel for the Settlement Class.

4) appointing Atticus Administration as the Settlement Administrator.

5) directing the Settlement Administrator to provide notice to members of the Settlement Class as set forth in the Settlement.

6) establishing the deadline for members of the Settlement Class to opt out of the settlement or to object to the Settlement.

7) establishing the deadline for Plaintiff to file a motion for an award of attorney's fees, costs and a service payment.

8) scheduling a final approval and fairness hearing on a date approximately 120 days after preliminary approval of the Settlement to consider whether the Settlement should be finally approved as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure for the purposes of judgment and to rule on Plaintiff's motion for attorney's fees, costs and a service payment.

Plaintiff's motion is made under Rule 23(e)(1) of the Federal Rules of Civil Procedure on the grounds that both class certification and approval of the Settlement for the purposes of judgment are likely to be granted at the final fairness hearing.

Plaintiff's motion is based on this Notice and attached Memorandum of Points and Authorities; the Stipulation re Class Action Settlement and Release of Claims, the Declaration of Gregory N. Karasik, and the Declaration of Santos Gomez submitted herewith; all other pleadings and papers on file in this action; and any oral argument or other matter that may be considered by the Court.

Dated: June 30, 2023

KARASIK LAW FIRM
LAW OFFICES OF SANTOS GOMEZ

By      s/ *Gregory N, Karasik*
        Gregory N. Karasik
        Attorneys for Plaintiff

Gregory N. Karasik (SBN 115834)
**Karasik Law Firm**
16021 Aiglon St.
Pacific Palisades, CA 90272
Tel (310) 463-9761
Fax (310) 943-2582
greg@karasiklawfirm.com

Santos Gomez (SBN 172741)
**Law Offices of Santos Gomez**
1003 Freedom Boulevard
Watsonville, CA 95076
Tel (831) 228-1560
Fax (831) 228-1542
santos@lawofficesofsantosgomez.com

Attorneys for Plaintiff
JOSE MARIO MENDOZA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MARIO MENDOZA,<br><br>                    Plaintiff,<br><br>        vs.<br><br>TRANS VALLEY TRANSPORT et al,<br><br>                    Defendants.<br>_____<br><br>And Related Cross-Action | Case No. 22-cv-07164 TLT<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: October 3, 2023<br>Time: 2:00 p.m.<br>Ctrm: 9 (via Zoom) |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................1

II.   LITIGATION HISTORY ...................................................................1

III.  SUMMARY OF SETTLMENT TERMS.............................................3

IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL .........4

      A.    Plaintiff's Claims Merit Class Action Treatment ....................5

            1. Numerosity ...................................................................5

            2. Commonality ...............................................................5

            3. Typicality.....................................................................6

            4. Adequate Representation..............................................7

            5. Predominance of Common Questions ...........................7

            6. Superiority ...................................................................8

      B.    The Settlement Is Fair, Reasonable and Adequate ................9

V.    THE CLASS NOTICE COMPORTS WITH THE REQUIREMENTS OF RULE

      23(c)    ...............................................................................19

VI.   THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING AND

      SET A DEADLINE FOR PLAINTIFF TO FILE A FEES MOTION ............................19

VII.  CONCLUSION ............................................................................20

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Products Inc. v. Woodward*
    (1997) 521 U.S. 591 ......................................................................... 9

*Ayala v. U.S. Express Enterprises*
    (C.D. Cal 2020) 2020 WL 3071707 ................................................. 13

*Blackie v. Barrack*
    (9th Cir. 1975) 524 F.2d 891........................................................... 5,7

*Briseño v. Henderson*
    (9th Cir. 2021) 998 F.3d 1014 ................................................. 10,16,17.18

*Cal Rural Legal Assistance, Inc. v. Legal Servs. Corp.*
    (9th Cir. 1990) 917 F.2d 1171 ......................................................... 6

*Campanelli v. Image First Healthcare Laundry Specialists, Inc.*
    (N.D. Cal. 2018) 2018 WL 6727825 ............................................... 7

*Cardenas v. McLane Food Services, Inc.*
    (C.D. Cal. 2011) 796 F.Supp.2d 1246 ............................................. 13

*Craft v. County of San Bernardino*
    C.D. Cal. 2008) 624 F.Supp.2d 1113 ............................................. 17

*Elkins v. Equitable Life Ins. Of Iowa*
    (M.D. Fla. 1998) 1998 WL 133747 ................................................. 9

*Garcia v. Superior Court*
    (2022) 80 Cal.App.5th 63 ............................................................... 14

*Hanlon v. Chrysler Corp.*
    (9th Cir. 1998) 150 F. 3d 1011
    *overruled on other grounds*,
    *Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338........................5,6,7,10,11,12,17,18

*Hanon v. Dataproducts Corp.*
    (9th Cir. 1992) 976 F.2d 497 ........................................................... 6

*Ikonin v. Hartz Mountain Corp.*
    (S.D. Cal. 1998) 122 F.R.D. 258 ..................................................... 5

*In re Activision*
    (N.D. Cal. 1985) 621 F.Supp. 415 ................................................... 6

*In re Cedant Corp., Derivative Action Litigation*
    (D. N.J. 2002) 232 F.Supp.2d 327 ................................................. 12

*In re Immune Response Securities Litigation*
    (S.D. Cal. 2007) 497 F.Supp.2d 1166..............................................11

*In re Mercury Interactive Corp. Securities Litigation*
    (9th Cir. 2010) 618 F.3d 988........................................................... 20

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

*In re Pacific Enterprises Security Litigation*
   (9th Cir. 1995) 47 F.3d 373......................................................................... 16

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*
   (E.D. N.Y. 2019) 330 F.R.D. 11 ................................................................. 4

*Ingram v. The Coca Cola Co.*
   (N.D. GA. 2001) 200 F.R.D. 685 ...............................................................

*International Brotherhood of Teamsters, Local 2785 v. Federal Motor Carrier Safety Administration*
   (9th Cir. 2021) 986 F.3d 841 ..................................................................... 14

*Jordan v. Los Angeles County*
   (9th Cir.) 669 F.2d 1311
   *vac. on other grounds*, 459 U.S. 810 (1982) ........................................... 5

*Kaupelis v. Harbor Freight Tools*
   (C.D. Cal. 2021) 2021 WL 4816833 ......................................................... 16

*Lalli v. First Team Real Estate – Orange County*
   (C.D. Cal. 2022) 2022 WL 8207530 ................................................. 4,10,12,16

*Lerwill v. Inflight Motion Pictures Inc.*
   (9th Cir. 1987) 582 F.2d 507...................................................................... 8

*Levya v. Medline Industries, Inc.*
   (9th Cir. 2013) 716 F.3d 510 ..................................................................... 7

*Linney v. Cellular Alaska Partnership*
   (9th Cir. 2001) 244 F.3d 1152....................................................................11

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
   (9th Cir. 2001) 244 F.3d 1152 .................................................................. 7,8

*McKinney Drobnis v. Oreschack*
   (9th Cir. 2021) 16 F.4th 594...................................................................... 18

*Mendoza v. Trans Valley Transport*
   (2022) 75 Cal.App.5th 748 ........................................................................ 2

*Mendoza v. United States*
   (9th Cir. 1980) 623 F.2d 1338 .................................................................. 19

*Mullane v. Central Hanover Bank & Trust Co.*
   (1950) 339 U.S. 306 ................................................................................. 19

*Murray v. GMAC Mortgage Corp.*
   (N.D. Ill 2007) 2008 WL 1100608 ............................................................ 6

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*
   (9th Cir. 1982) 688 F.2d 615..................................................................... 10

*Quezada v. Con-Way Freight, Inc.*
   (N.D. Cal. 2012) 2012 WL 2847609 ......................................................... 13

*Quinlan Macy's Corporate Services, Inc.*
   (C.D. Cal. 2013) 2013 WL 11091572.......................................................... 6

iii

*Paul, Johnston, Alston & Hunt v. Graulty*
    (9th Cir. 1989) 886 F.2d 268 ............................................................................. 16

*Ridgeway v. Wal-Mart Stores, Inc.*
    (N.D. Cal. 2015) 107 F.Supp.3d 1044 .............................................................. 13

*Romero v. Producers Daily Foods, Inc.*
    (E.D. Cal. 2006) 255 F.R.D. 474 ......................................................................... 5

*Salter v. Quality Carriers*
    (C.D. Cal. 2021) 2021 WL 5049054 ................................................................. 13

*Satchell v. Fed Express Corp.*
    (N.D. Cal. 2007) 2007 WL 11144010 ............................................................... 12

*Silber v. Mabon*
    (9th Cir. 1994) 18 F.3d 1449 ........................................................................... 19

*Singer v. Becton Dickinson and Co.*
    (S.D. Cal. 2010) 2010 WL 2196104 ................................................................. 17

*Six (6) Mexican Workers v. Arizona Citrus Growers*
    (9th Cir. 1990) 904 F.2d 1301 ........................................................................ 16

*Staton v. Boeing Co.*
    (9th Cir. 2003) 327 F.3d 938 ........................................................................ 4,10

*Strub v. American Equity Inv. Life Ins. Co.*
    (M.D. Fla. 2005) 226 F.R.D. 688 ........................................................................ 9

*Valentino v. Carter-Wallace*
    (9th Cir. 1996) 97 F.3d 1227 ............................................................................ 8

*Valiente v. Swift Transp. Co. of Arizona, LLC*
    (9th Cir. 2022) 54 F.4[th] 581 ......................................................................... 14

*Vasquez v. Coast Valley Roofing, Inc.*
    (E.D. Cal. 2010) 266 F.R.D. 482 ............................................................. 15,16,17

*Vizcaino v. Microsoft Corp.*
    (9th Cir. 2002) 290 F.3d 1043 ........................................................................ 16

*Walters v Reno*
    (9th Cir. 1998) 145 F.3d 1032 ........................................................................... 7

*West v. Circle K. Stores, Inc.*
    (E.D. Cal. 2006) 2006 WL 8458679 ................................................................. 15

*Westfall v. Ball Metal Beverage Container Corporation*
    (E.D. Cal. 2021) 2021 WL 4206851 ........................................................... 4,10,17

*Zinser v. Accufi Research Institute, Inc.*
    (9th Cir. 2001) 253 F.3d 1188 ........................................................................... 7

**STATE STATUTES**

California Labor Code

      Section 203 ................................................................................................ 14

      Section 226 ................................................................................................ 14

      Section 1197 ............................................................................................ 5,8

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 23(a) .......................................................................................................... 4

Rule 23(a)(1) ...................................................................................................... 5

Rule 23(a)(2) ...................................................................................................... 5

Rule 23(a)(3) ...................................................................................................... 6

Rule 23(a)(4) ...................................................................................................... 7

Rule 23(b)(3) ....................................................................................... 4,8,9,19

Rule 23(c)(1)(C) ............................................................................................... 13

Rule 23(c)(2) .................................................................................................... 19

Rule 23(c)(2)(B) ............................................................................................... 19

Rule 23(e) ........................................................................................................... 4

Rule 23(e)(1) .................................................................................................... 16

Rule 23(e)(1)(A) ................................................................................................. 4

Rule 23(e)(1)(B) ................................................................................................. 4

Rule 23(e)(2) ....................................................................................... 4,5,9,10,18

Rule 23(e)(2)(A) ........................................................................................... 9,10

Rule 23(e)(2)(B) ........................................................................................... 9,11

Rule 23(e)(2)(C) ........................................................................................... 9,12

Rule 23(e)(2)(C)(i) .......................................................................................... 12

Rule 23(e)(2)(C)(ii) ......................................................................................... 15

Rule 23(e)(2)(C)(iii) .................................................................................... 16,18

Rule 23(e)(2)(C)(iv) ......................................................................................... 18

Rule 23(e)(2)(D) ................................................................................................................ 9,18

Rule 23(h) .................................................................................................................... 5,16,20

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

# I.  INTRODUCTION

Plaintiff asserts class action claims against Defendants Trans Valley Tranport ("TVT") and FTU Labor Contractors, Inc. ("FTU") based on the principal contention that truck drivers who worked for Defendants were paid trip pay that constituted piece rate wages, such that Defendants were required to pay Plaintiff and other truck drivers minimum wages, separately from their piece rate wages, for all their non-driving work activities.  Based on that central contention, Plaintiff primarily asserts claims against Defendants for failure to pay minimum wages in violation of Labor Code Section 1197, failure to provide accurate wage statements in violation of Labor Code Section 226, and failure to pay all wages owed upon termination in violation of Labor Code Section 201 or 202.  Plaintiff also contends that Defendants' violations of the Labor Code constitute unfair competition.

After more than 8 years of litigation – during most of which the case was pending in state court and delayed by appellate court proceedings following Defendants' appeal from an order at the outset of the case denying their motion to compel arbitration -- the parties ultimately reached a settlement on behalf of 206 truck drivers who did not sign arbitration agreements.  Plaintiff now moves under Rule 23(e) of the Federal Rules of Civil Procedure for preliminary approval of the settlement and conditional class certification for the purposes of settlement.  For all the reasons set forth below, the Settlement is fair, reasonable and adequate and will likely be granted final approval.  Class members should therefore be given notice of the Settlement so they can decide whether or not to exercise their right to object to the Settlement or request exclusion from the Settlement.

# II.  LITIGATION HISTORY

Plaintiff filed a complaint against TVT in state court on May 26, 2015 and Plaintiff filed a First Amended Complaint in state court (which added FTU as a defendant) in September 2015.  In the First Amended complaint, Plaintiff asserted class action claims on behalf of persons who worked for Defendants as truck drivers for Failure to Pay Minimum Wages, Failure to Provide Rest Periods, Failure to Provide Meal Periods, Unfair Competition, Failure to Provide Accurate Wage Statements, and Failure to Pay All Wages Owed Upon Termination.  Subsequently, FTU filed a cross-complaint against PeopLease, LLC for indemnity. FTU contends that PeopLease, from whom FTU leased employees, was a joint employer of the truck drivers who worked for FTU.  (Karasik Decl. ¶ 6).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

After responding to interrogatories and document requests propounded by Plaintiff, Defendants filed a motion to compel arbitration based on an arbitration policy contained in FTU's handbook which the trial court denied without prejudice on November 22, 2016. The trial court denied with prejudice on January 3, 2017 a second motion to compel arbitration filed by Defendants. More than five years later, the court of appeal upheld the trial court's ruling in the published decision *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748. The court of appeal held that the arbitration policy in FTU's handbook did not create a binding agreement to arbitrate. (Karasik Decl. ¶ 7).

After the court of appeal decision, the parties participated in a mediation before Lisa Klerman on September 23, 2022. Before the mediation, the parties engaged in a substantial amount of discovery, including interrogatories and document requests propounded and responded to by both parties and the taking of Plaintiff's deposition by Defendants. In connection with their discovery responses, Defendants produced to Plaintiff nearly 1,000 pages of documents. Defendants also provided Plaintiff, informally for the purposes of mediation, a substantial amount of class information that enabled Plaintiff's counsel to calculate Defendants' potential liability, including the number of putative class members who had not signed arbitration agreements, the number of putative class members who had signed arbitration agreements, and the number of workweeks worked by putative class members. (Karasik Decl. ¶ 8).

That mediation did not result in a settlement. After the unsuccessful mediation, Plaintiff propounded additional written discovery, including additional interrogatories and requests for admissions. On November 15, 2022, before their responses to discovery was due, Defendants removed the case to federal court on the grounds of diversity jurisdiction under the Class Action Fairness Act. Defendants subsequently served their responses to the additional written discovery that had been propounded by Plaintiff shortly before removal. (Karasik Decl. ¶ 9).

After the case was removed to federal court, the parties agreed to have a settlement conference before the Honorable Magistrate Judge Virginia K. DeMarchi, which was scheduled for May 12, 2023. Prior to the settlement conference, Plaintiff agreed to dismiss his claims that Defendants failed to provide truck drivers with meal periods or rest periods because on November 23, 2022, the Ninth Circuit in *Valiente v. Swift Transp. Co. of Arizona, LLC* (9th Cir. 2022) 54 F.4th 581 held that the

FMCSA's determination, that federal law preempts California meal and rest period laws with respect to truck drivers engaged in interstate commerce, applies retroactively. (Karasik Decl. ¶ 10).

At the settlement conference on May 12, 2023, the Parties exchanged proposals and counterproposals during arms-length bargaining that lasted a full day without reaching agreement on the terms of a settlement. However, because the parties had made substantial progress towards a settlement, they agreed to another half day for a settlement conference with Judge DeMarchi that was scheduled for May 17, 2023. At the settlement conference on May 17, 2023, the Parties ultimately reached agreement on the material terms of a class action settlement. Thereafter, the Parties prepared formal settlement documents that, after negotiation of various settlement details, culminated in the execution of the parties' Stipulation Regarding Class Action Settlement and Release of Claims (the "Settlement"). Settlement details that were not negotiated until after the parties reached agreement on the Gross Settlement Amount included the maximum amounts of attorney's fees, costs and incentive payment that could be requested by Plaintiff without objection from Defendants. (Karasik Decl. ¶ 11).

### III. SUMMARY OF SETTLEMENT TERMS

The full terms of the settlement are set forth in the Stipulation Regarding Class Action Settlement and Release of Claims filed herewith. The material terms of the Settlement are as follows:

- The Settlement Class is comprised of all persons who worked as truck drivers for Trans Valley Transport and/or FTU Labor Contractors, Inc. at any time between May 26, 2011 and February 28, 2015 who did not enter into arbitration agreements. There are 206 class members.

- Defendants will pay the Gross Settlement Amount of Seven Hundred Thousand Dollars ($700,000) in exchange for a release of class member claims.

- After settlement administration expenses, attorney's costs and fees, and a service payment are deducted from the Gross Settlement Amount, the entirety of the remaining funds ("the Net Settlement Amount") shall be distributed to class members on a pro-rata basis. The amount each participating class member receives will be based on the number of workweeks worked during the class period.

- Defendants will pay the employer's share of payroll taxes separately from the Gross Settlement Amount.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

- Defendants will not oppose an application by Plaintiff for an award of costs of up to $15,000 or an award of attorney's fees up to $233,333.33 (33.3% of the Gross Settlement Amount).

- Defendants will not oppose an application by Plaintiff for a service payment of up to Seven Thousand Five Hundred Dollars ($7,500).

## IV.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

Approval of a proposed class action settlements is governed by Rule 23(e) of the Federal Rules of Civil Procedure, which was most recently amended in 2018.  Rule 23(e)(1)(A) now provides that the parties "must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class" and Rule 23(e)(1)(B) now provides that notice must be given to class members who would be bound by the proposed settlement if "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for the purposes of judgment on the proposal."

The amendments to Rule 23(e) codify the principle established by case law that judicial review of a class action settlement entails a two-step process. "When the parties reach a settlement agreement before class certification, district courts use a two-step process to approve a class-action settlement. *See Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 952.  First, the Court must certify the proposed settlement class.  *Id.*  Second, the Court may finally approve a class action settlement "only after a hearing on and finding that the settlement . . . is fair, reasonable and adequate."  *Lalli v. First Team Real Estate – Orange County* (C.D. Cal. 2022) 2022 WL 8207530, at *3.

At the preliminary approval stage, the parties need only show that class certification and final approval "will likely" be granted.  "Because Rule 23(e)(2) sets forth the factors a court must consider when weighing *final* approval, it appears that courts must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the factors weigh in favor of final settlement approval."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (E.D. N.Y. 2019) 330 F.R.D. 11, 28.  *See also*, *Westfall v. Ball Metal Beverage Container Corporation* (E.D. Cal. 2021) 2021 WL 4206851, at *3 (preliminary approval requires "likelihood of class certification" and "likely approval under Rule 23(e)(2)").

For the reasons set forth below, both class certification and final approval under Rule 23(e)(2) are "likely" as required for preliminary approval. This action meets the requirements for class certification under Rule 23(a) and Rule 23(b)(3) and the Settlement is fair, reasonable and adequate considering the factors enumerated in Rule 23(e)(2) and case law establishing the requirements for approval of class action settlements both prior to and after the amendment of Rule 23(e) in 2018.

## A.   Plaintiff's Claims Merit Class Action Treatment

In the context of a settlement reached before a court ruling on a motion for class certification, a district court "must pay undiluted, even heightened, attention to class certification requirements." *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1019, *overruled on other grounds*, *Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338. In this case, Plaintiff's claims clearly meet all the requirements for class certification under Rule 23(a) and Rule 23(b)(3)

### 1.   Numerosity

Under Rule 23(a)(1), a class may be maintained where the "class is so numerous that joinder of all members is impracticable." Here, there are 206 persons in the Settlement Class. This large number easily satisfies the numerosity requirement of Rule 23(a). *See, Jordan v. Los Angeles County* (9th Cir.) 669 F.2d 1311, 1319, *vac. on other grounds*, 459 U.S. 810 (1982) (classes of 39, 64 and 71 persons satisfied numerosity requirement and trial court erred in denying class certification for lack of numerosity). *See also*, *Ikonin v. Hartz Mountain Corp.* (S.D. Cal. 1998) 122 F.R.D. 258, 262 ("As a general rule . . . classes of 40 or more are numerous enough"); *Romero v. Producers Daily Foods, Inc.* (E.D. Cal. 2006) 255 F.R.D. 474, 485 ("A class with over forty members is presumed to satisfy the numerosity prerequisite.").

### 2.   Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." This commonality requirement must be "construed permissively." *Hanlon*, 150 F.3d at 1019. Plaintiff need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." *Ibid.* Where a class is united by a common interest in determining whether defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie v. Barrack* (9th Cir. 1975) 524 F.2d 891,

902.  Here, there is a fundamental question of law common to all members of the Settlement Class that is determinative of Defendants' liability:  whether Defendants' compensation system pays truck drivers minimum wages for non-driving work activities in compliance with Labor Code Section 1197.  Since the answer to this question will be the same for each member of the Settlement Class, this common issue satisfies the requirements of Rule 23(a)(2).

### 3.    **Typicality**

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class."  Representative claims are typical "If they are reasonably co-extensive with those of absent class members; they need not be identical." *Hanlon*, 150 F.3d at 1020.  In other words, named plaintiffs need not be "identically situated" with all other class members.  "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief. *Cal Rural Legal Assistance, Inc. v. Legal Servs. Corp.* (9th Cir. 1990) 917 F.2d 1171, 1175.

Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataproducts Corp.* (9th Cir. 1992) 976 F.2d 497,508.  The test of typicality is thus "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.*

Here, Plaintiff is a member of the Settlement Class and Plaintiff alleges the same injuries allegedly suffered by other class members.  This lawsuit is clearly based on conduct that is not unique to Plaintiff but was a practice common to all members of the Settlement Class, all of whom were paid pursuant to the same compensation system.  Because the Settlement Class does not include any truck drivers who signed arbitration agreements (which Defendants started having truck drivers sign in March 2015) who would have defenses not applicable to Plaintiff, Plaintiff's claims easily satisfy the typicality requirement of Rule 23(a)(3).[1] *See, e.g., Murray v. GMAC Mortgage Corp.* (N.D. Ill. 2007)

---

[1] Many district courts have found typicality lacking when a named plaintiff not subject to an arbitration agreement sought to certify a class including employees who did sign arbitration agreements because employees who signed arbitration agreements had potential defenses the named plaintiff did not.  *See, e.g., Quinlan Macy's Corporate Services, Inc.* (C.D. Cal. 2013) 2013 WL 11091572, at * 3.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

2008 WL 1100608, *5 (typicality established where, despite minor factual discrepancies, all putative class members had "the same essential characteristics"); *see also, In re Activision* (N.D. Cal. 1985) 621 F.Supp. 415, 428 (finding that "the only material variation among class members is the amount of damages to which each member is entitled" and that "[s]uch differences are insufficient to defeat class certification").

**4**.    **Adequate Representation**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation turns on whether the named plaintiffs and their counsel "have any conflicts of interest with other class members," and whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Hanlon,* 150 F.3d at 1020. *See also*, *Walters v Reno* (9th Cir. 1998) 145 F.3d 1032, 1046 (class representatives adequate where they were "interested and involved in obtaining relief" despite defendants' claim that representatives committed fraud). Here, there are no conflicts of interest between Plaintiff and other members of the Settlement Class because the Settlement Class only includes drivers who, like Plaintiff, did not sign arbitration agreements.[2] Nor are there any conflicts with Plaintiff's counsel. (Karasik Decl. ; Gomez Decl. ¶ 8). Defendants cannot dispute that Plaintiff's counsel, who have substantial class action experience (Karasik Decl. ¶ ; Gomez Decl. ¶ 2-5), can adequately represent the class. *See, Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.* (9th Cir. 2001) 244 F.3d 1152, 1162 (adequacy established by mere fact that counsel were experienced practitioners).

**5**.    **Predominance Of Common Questions**

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund,* 244 F.3d at 1162. Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufi Research Institute, Inc.* (9th Cir. 2001) 253 F.3d 1188, 1189. "When common questions present a significant aspect of the case and they can be resolved for all members of

---

[2] Many district courts have ruled that a named plaintiff who did not sign an arbitration agreement could not adequately represent a class that included employees who did sign arbitration agreements because a named plaintiff who did not sign an arbitration agreement would be unable to argue on behalf of employees who did sign arbitration agreements. *See, e.g., Campanelli v. Image First Healthcare Laundry Specialists, Inc.* (N.D. Cal. 2018) 2018 WL 6727825, at *7.

7

the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon,* 150 F.3d at 1022. It is well settled that the need for determining differing amounts of damages suffered by different class members does not preclude class certification. *See Blackie,* 524 F.2d at 905. *See also, Levya v. Medline Industries, Inc.* (9th Cir. 2013) 716 F.3d 510, 514 "(presence of individualized damages cannot, by itself, defeat class certification").

The predominance requirement is satisfied here because Defendants' liability hinges on the common issue whether Defendants' compensation system pays truck drivers minimum wages for non-driving work activities in compliance with Labor Code Section 1197. Since Defendants' liability turns on the resolution of a common question of law the answer to which will apply equally to all class members, the Settlement Class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund,* 244 F.3d at 1162.

### 6. <u>Superiority</u>

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied. *Culinary/Bartenders Trust*, 244 F.3d at 1163. *See also, Valentino v. Carter-Wallace* (9th Cir. 1996) 97 F.3d 1227, 1235-36 ("a class action is a superior method for managing litigation if no realistic alternative exists").

Here, since Defendants allegedly violated the law with respect to more than 200 employees, there are no economical alternatives to a class action. The only way for members of the Settlement Class to vindicate all their rights in this case would be through individual lawsuits. But, since there are 206 class members, that would clearly be an inefficient method. *See*, *Lerwill v. Inflight Motion Pictures Inc.* (9th Cir. 1987) 582 F.2d 507, 512 (in certifying a class of employees seeking overtime wages, the court held that "[n]umerous individual actions would be expensive and time consuming").

Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion. Ordinarily, these factors are: (A) the interest of members of the class in individually controlling the prosecution or defense in separate actions; (B) the extent and nature of any litigation concerning the controversy

already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. However, when a court reviews a class action settlement, the fourth factor does not apply. In deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620. Here, the remaining factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification.

First, members of the Settlement Class have no particular interest in individually controlling the prosecution of separate actions. Any member of the Settlement Class who wants to pursue a claim for an amount greater than a settlement share can opt out of the Settlement.

Second, there is no competing litigation regarding the statutory violations at issue.

Finally, it is desirable to concentrate the issues in this forum because the parties reside in California and many members of the Settlement Class reside in California. Instructively, Defendants did not move to transfer venue for these cases to another district. Moreover, the parties have reached a Settlement. "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. Of Iowa* (M.D. Fla. 1998) 1998 WL 133747, at *19. *See also, Strub v. American Equity Inv. Life Ins. Co.* (M.D. Fla. 2005) 226 F.R.D. 688, 697 (third and fourth Rule 23(b)(3) factors are "conceptually irrelevant in the context of a settlement"). The conclusion is inescapable that a class action provides the most efficient mechanism for resolving all the claims of the members of the Settlement Class in this case.

## B.     The Settlement Is Fair, Reasonable And Adequate

Rule 23(e)(2) directs that courts may find a class action settlement to be fair, reasonable and adequate only after considering whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-

member claims; (iii) the terms of any proposed award of attorney's fees, including

timing of payment; and (iv) any agreement required to be identified under Rule

23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Prior to the 2018 amendments to Rule 23, the Ninth Circuit established that assessment of a class action settlement "requires the district court to balance a number of factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members." *Hanlon,* 150 F.3d at 1026. The *Hanlon* factors are not an "exhaustive list" and the Ninth Circuit in *Hanlon* did not suggest which factors are the most important. *See, Staton*, 327 F.3d at 959. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Commission of City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615, 625.

More recently, the Ninth Circuit has ruled that a district court must "scrutinize the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: 1) whether counsel "received a disproportional distribution of the settlement"; 2) whether the parties agreed to a "clear sailing agreement;" and 3) whether the settlement includes a "kicker" or "reverter" clause. *Briseño v. Henderson* (9th Cir. 2021) 998 F.3d 1014, 1023. Because the 2018 amendments to Rule 23 were not intended to displace factors to be considered pursuant to preexisting judicial decisions, district courts within the Ninth Court ruling on motions for approval of class action settlements now consider a combination of the Rule 23(e)(2) factors, the *Hanlon* factors (some of which are subsumed by Rule 23(e)(2) and some of which may not apply at all or at the preliminary approval stage), and the *Briseño* factors. *See*, *e.g.*, *Westfall,* 2021 WL 4206851, at *4; *Lalli,* 2022 WL 8207530, at *3; *Hashemi v. Bosley, Inc.* (C.D. Cal. 2022) 2022 WL 18278431, at *3-7. Here, consideration of all the relevant factors leads to the conclusion that the Settlement is fair, reasonable, and adequate under Rule 23(e)(2).

*Adequate Representation*

Rule 23(e)(2)(A) requires a court to consider whether "the class representatives and class counsel have adequately represented the class." In this case Plaintiff and his counsel have vigorously and adequately represented the interests of members of the Settlement Class for more than eight years. Plaintiff and his counsel defeated Defendants' motion to compel arbitration, prevailed on Defendants' appeal from the denial of their motion to compel arbitration, engaged in substantial discovery, attempted to reach a settlement at a private mediation, and eventually negotiated a settlement at the settlement conference presided over by Magistrate Judge DeMarchi. Plaintiff assisted his counsel throughout the entirety of this ligation, by providing information and documents necessary for discovery responses, sitting for deposition, and participating in the mediation and settlement conferences before Judge DeMarchi. (Karasik Decl. ¶ 13; Gomez Decl. ¶ 6-7). The fact that Plaintiff and his counsel reached a settlement only after completing a significant amount of discovery and overcoming Defendants' arbitration defense at both the trial and appellate level demonstrates that Plaintiff and his counsel have adequately represented the Settlement Class.

*Arm's Length Negotiations and Extent of Discovery*

Rule 23(e)(2)(B) requires a court to consider whether a class action settlement "was negotiated at arm's length." A related factor under *Hanlon* is the "extent of discovery completed." In this case, agreement on the material terms of the Settlement was only reached after a settlement conference with Judge DeMarchi held over the course of a day and a ½ (a full day on May 12, 2023 and a ½ day on May 17, 2023); and the settlement conference was preceded by substantial discovery (including Defendant producing nearly 1,000 pages of documents and Plaintiff sitting for deposition) and Defendants providing Plaintiff's counsel with information informally, in connection with the unsuccessful mediation before Lisa Klerman on September 23, 2022, that enabled Plaintiff's counsel to calculate Defendants' potential liability.

The fact that a settlement results from arm's length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership* (N.D. Cal. 1997) 1997 WL 450064, at *5. *See also, In re Immune Response Securities Litigation* (S.D. Cal. 2007) 497 F. Supp.2d 1166, 1174 (settlement approved where informal discovery gave the parties a clear

11

view of the strength and weaknesses of their cases). The presence and assistance of Judge DeMarchi in the settlement process further demonstrates that the Settlement was not collusive but was the product of informed, arm's length negotiations. "The presence and assistance of an experienced mediator in the settlement process strongly suggests 'that the settlement is not collusive.'" *Lalli*, 2022 WL 8207530 at *4 [citing *Satchell v. Fed Express Corp.* (N.D. Cal. 2007) 2007 WL 11144010, at *4].

*Adequate Relief for The Class*

Rule 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is adequate" taking into account various factors. Plaintiff discusses those factors below along with factors relevant to the reasonableness, fairness or adequacy of a class action settlement under *Hanlon*.

<u>The Amount Offered in Settlement</u>

One of the factors to be considered under *Hanlon* is the "amount offered in settlement." In this case, the Gross Settlement Amount of $700,000 represents a substantial recovery for members of the Settlement Class. Based on the information provided by Defendants, Plaintiff's counsel calculated that Defendants' maximum potential liability for unpaid wages to members of the Settlement Class was approximately $2,800,000. A recovery of approximately 25% of the maximum amount of damages for unpaid wages that might have been recovered if Plaintiff had prevailed at trial reflects a result well within the range of reasonable outcomes. (Karasik Decl. ¶ 14). Courts have often approved class action settlements that provide a much smaller fraction of recovery. *See, e.g., In re Cedant Corp., Derivative Action Litigation* (D. N.J. 2002) 232 F.Supp.2d 327 (approving settlement which provided 2% value compared to maximum possible recovery).

<u>The Risks and Duration of Litigation and the Strength of Plaintiff's Claims</u>

Rule 23(e)(2)(C)(i) requires a court to consider "the costs, risks, and delay of trial and appeal" and the *Hanlon* factors similarly include the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status throughout the trial. For several reasons, the Settlement reflects a particularly good result in light of the significant litigation risks faced by Plaintiff with respect to both class certification and the merits of his claims which, in the absence of a settlement, would have taken years to litigate.

First, although Defendants do not oppose class certification for settlement purposes, Defendants would have opposed a motion for class certification otherwise.  Plaintiff thus faced a significant risk that he would not prevail on a contested motion for class certification.  Even if Plaintiff prevailed on a contested motion for class certification, Plaintiff would still face the risk of Defendant filing a motion for decertification.  Under Rule 23(c)(1)(C) district courts have discretion to decertify a class at any stage of litigation before a final judgment.  If the Court either denied Plaintiff's motion for class certification or later granted a motion for decertification filed by Defendants, members of the Settlement Class would have recovered absolutely nothing. (Karasik Decl. ¶ 15).

Second, Plaintiff faced even greater risks with respect to the merits of his claims because case law regarding piece rate wages for truck drivers is mixed and arguably inconsistent.  On the one hand, cases like *Cardenas v. McLane Food Services, Inc.* (C.D. Cal. 2011) 796 F.Supp.2d 1246 and *Quezada v. Con-Way Freight, Inc.* (N.D. Cal. 2012) 2012 WL 2847609 support Plaintiff's contention that Defendants' compensation system is, on its face, unlawful.  *Cardenas* holds that "a **piece-rate** formula that does not compensate directly for all **time** worked does not comply with California Labor Codes, even if, average out, it would **pay** at least minimum wage for all hours worked." *Cardenas*, 796 F.Supp.2d at 1251 (emphasis in the original).  Adopting the reasoning of *Cardenas,* the court in *Quezada* ruled that an employer may not "'build in' time for non-driving tasks into a piece rate compensation system." *Quezada,* 2012 WL 2847609, at *6.  The reasoning of *Cardenas* was also followed in *Ridgeway v. Wal-Mart Stores, Inc.* (N.D. Cal. 2015) 107 F.Supp.3d 1044, 1052-1053, where the court ruled that "a piece rate formula that does not compensate directly for all time worked does not comply with California Labor Codes."  (Karasik Decl. ¶ 16).

On the other hand, *Salter v. Quality Carriers* (C.D. Cal. 2021) 2021 WL 5049054 and *Ayala v. U.S. Express Enterprises* (C.D. Cal 2020) 2020 WL 3071707 arguably support Defendants' contention that their compensation system is lawful because it is permissible to compensate a driver for non-driving tasks by a piece rate system that pays a driver for all tasks (driving and non-driving) in connection with delivering a load.  *Salter* and *Ayala* are premised on the notion than an employer and employee can agree on what tasks are to be compensated for by a "piece" rate.  The legal analysis of *Salter* and *Ayala* appears to conflict with the legal analysis in *Cardenas*, under which "it is irrelevant

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

whether a pay formula was *intended* to compensate" for all non-driving activities "or even if employees believed it covered those activities." *Cardenas*, 796 F.Supp.2d at 1253 (Karasik Decl. ¶ 17).

The uncertainty of how California law applies to Defendants' compensation system not only posed a significant risk that Plaintiff would not prevail on his claims for unpaid wages but resulted in Plaintiff's derivative claims for wage statement penalties under Labor Code Section 226 and waiting time penalties under Labor Code Section 203 having virtually no settlement value. Civil penalties under Section 226 can only be recovered for a "knowing and intentional" failure to provide accurate wage statement. Statutory penalties under Section 203 can only be recovered for a "willful" failure to pay all wages owed. Since at least some case law arguably supports Defendants' contention that its compensation system is lawful, Defendants have strong "good faith" arguments to defeat Plaintiff's claims for wage statement and waiting time penalties. (Karasik Decl. ¶ 18).

Absent a settlement, Plaintiff faced the prospect of costly and lengthy litigation, including another appeal, over complex issues for which case law does not presently provide clear cut answers. Indeed, changes in the law had a significant impact on Plaintiff's claims for failure to provide meal periods and rest periods. Although those claims were viable when the complaint was filed in May 2015, on January 15, 2021 the Ninth Circuit, in *International Brotherhood of Teamsters, Local 2785 v. Federal Motor Carrier Safety Administration* (9th Cir. 2021) 986 F.3d 841 upheld the FMCSA's determination that federal law preempts California's meal and rest break laws as applied to truck drivers engaged in interstate commerce. Subsequently, on June 21, 2022, the California Court of Appeal held in *Garcia v. Superior Court* (2022) 80 Cal.App.5th 63, that the FMCSA's preemption decision did not apply retroactively. But the law changed again when, on November 23, 2022, the Ninth Circuit in *Valiente v. Swift Transp. Co. of Arizona, LLC* (9th Cir. 2022) 54 F.4th 581 ruled that the FMCSA's preemption decision did apply retroactively. (Karasik Decl. ¶ 19).

Given the unsettled nature of the law and the seemingly conflicting court decisions regarding piece rate wages for truck drivers, Plaintiff faced a significant risk that changes in the law might adversely affect his claims for unpaid wages just as unexpected legal developments doomed his meal period and rest period claims. Indeed, an appeal in the *Salter* case is presently pending in the Ninth Circuit. (Karasik Decl. ¶ 20).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

Defendants' Financial Condition

Implicit within the risks of litigating a case through trial, a consideration under *Hanlon*, is potential limitations on the defendant's ability to pay a final judgment. Plaintiff faced that risk in this case. As substantiated by the Declaration of Eric Triolo, Defendants as a practical matter could not afford a Gross Settlement Amount greater than $700,000 and would be forced into bankruptcy if Plaintiff were awarded the full amount of $2.8 million claimed as damages for unpaid wages. Thus, to accommodate Defendants' financial condition, Plaintiff agreed that the Settlement could be funded in two installments – the first no later than June 1, 2024 and the second no later than December 1, 2024. In the view of Plaintiff's counsel, it was reasonable for Plaintiff to agree to a Settlement that recovered as much as Defendants could afford to pay instead of taking the risk that, even if Plaintiff recovered a greater amount pursuant to a judgment after years of litigation, the judgment would not be collectible because Defendants would file for bankruptcy. (Karasik Decl. ¶ 21).

Experience and Views of Counsel

The experience and views of counsel are a relevant consideration under *Hanlon*. In this case, the experience and views of Plaintiff's counsel weigh strongly in favor of approving the Settlement. Based on the estimated Net Settlement Amount of $435,000 each member of the Settlement Class who does not request exclusion from the Settlement stands to receive, on average, a gross settlement payment of approximately $2,112. The uncertainty, cost and risk of continued litigation, coupled with the limitations imposed by Defendants' financial condition, led Plaintiff's counsel to reasonably conclude that a class-based settlement providing members of the Settlement Class with an average gross settlement payment of more than $2,000 provided them with "adequate relief" and that it would be in their best interests for the Settlement to be approved. (Karasik Decl. ¶ 22).

The opinions of Plaintiff's counsel are entitled to "considerable weight." *West v. Circle K. Stores, Inc.* (E.D. Cal. 2006) 2006 WL 8458679, at *5. *See also, Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482, 489 (courts should give great weight to counsel's recommendations). The opinion of Plaintiffs' counsel that the Settlement is fair and reasonable, and that approval of the Settlement would best serve the interests of members of the Settlement Class weighs strongly in favor of concluding that the Settlement provides adequate relief.

<u>Method for Distributing Settlement Benefits</u>

Rule 23(e)(2)(C)(ii) requires a court to consider "the effectiveness of any proposed method of distributing relief to the class." The method for distributing settlement benefits to members of the Settlement Class supports the conclusion that the Settlement provides them relief that is adequate because members of the Settlement Class need not submit claims to receive their share of settlement benefits. Each member of the Settlement Class who does not request exclusion from the Settlement will automatically be sent a settlement payment that is mailed to his/her last known address (after skip tracing is performed by the Settlement Administrator).

<u>Attorney's Fees</u>[3]

Rule 23(e)(2)(C)(iii) requires a court to consider "the terms of any proposed award of attorney's fees, including the timing of payment." Courts have construed this requirement as a dictate to "be on watch" for the three "red flags" identified in *Briseño* as tending to show collusion. *Lalli*, 2022 WL 8207530, at *3. *See also*, *Kaupelis v. Harbor Freight Tools* (C.D. Cal. 2021) 2021 WL 4816833, at *10 (court must scrutinize proposed award of attorney's fees "for three [*Briseño*] factors that tend to show collusion"). Analysis of the *Briseño* factors in this case leads to the conclusion that the maximum amount of attorney's fees that may be awarded to Plaintiff's counsel under the Settlement is not excessive or indicative of collusion.

Pursuant to the Settlement, Plaintiff's counsel may request up to 33.3% of the Gross Settlement Amount without objection from Defendants. The Ninth Circuit has established the rate of 25% as the "benchmark" for an award of attorney's fees in common fund cases. *See*, e.g., *Paul, Johnston, Alston & Hunt v. Graulty* (9th Cir. 1989) 886 F.2d 268, 272; *Six (6) Mexican Workers v. Arizona Citrus Growers* (9th Cir. 1990) 904 F.2d 1301, 1311. But the Ninth Circuit has identified four factors that warrant an adjustment of the benchmark rate: "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of non-payment."

---

[3] The Court need not decide how much to award Plaintiff for attorney's fees, costs or a service payment at the preliminary approval stage but will rule, in conjunction with the final fairness hearing, on Plaintiff's separate motion for attorney's fees, costs and a service payment (the "Fees Motion") under Rule 23(h). Since whether Plaintiff's Fees Motion is likely to be granted is not a consideration for preliminary approval under Rule 23(e)(1), Plaintiff will address the reasonableness of the amount of attorney's fees, costs and service payment actually requested, and submit declarations in support thereof, when Plaintiff files his Fees Motion. (Karasik Decl. ¶ 23).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

*Hanlon*, 150 F.3d at 1029. *See also*, *In re Pacific Enterprises Security Litigation* (9th Cir. 1995) 47 F.3d 373, 379 (33.3% rate justified by "complexity of the issues and the risks"); *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1048 (28% rate justified because plaintiff achieved "exceptional results" and case was "extremely risky for class counsel"). Application of these factors typically results in adjusting the benchmark rate upwards. *See*, *e.g., Singer v. Becton Dickinson and Co.* (S.D. Cal. 2010) 2010 WL 2196104, at *8 (noting awards in class action cases where fees ranged from 30.3% to 40%); *Craft v. County of San Bernardino* (C.D. Cal. 2008) 624 F.Supp.2d 1113, 1125 (25% "is substantially below the average class fund fee nationally"); *Vasquez,* 266 F.R.D. at 492 (33.3% rate justified by "good result achieved for Plaintiffs, the risk counsel took in pursuing the matter, and the skill they exhibited in prosecuting the case).

Thus, while a fee award equal to 33.3% of a common fund is slightly higher than the "benchmark" rate, it is by no means so high as to make a fee award "disproportional" under *Briseño.* For example, in *Westfall*, the court granted preliminary approval of a settlement which provided for attorney's fees equal to 33% of the gross settlement amount because the settlement was likely to be approved under Rule 23(e)(2) so long as the parties could satisfy at the final approval stage some concerns expressed by the court. With respect to the proposed amount of attorney's fees, the court noted that other courts "have approved fees at 33 percent of the settlement fund for matters involving state law claims." *Westfall*, 2021 WL 4206851, at *5. *See also, Vasquez*, 266 F.R.D. at 491 (citing to class actions where fee awards ranged from 30% to 40%). The court in *Westfall* thus concluded that a rate of 33% did not raise any red flag under *Briseño.* "While 33 percent is on the higher side, it is a far cry from the concerning 88 percent fee in *Briseño*. *Westfall*, 2021 WL 4206851, at *5.

Although the Settlement does provide that Defendants will not object to a request for attorney's fees up to 33.3% of the Gross Settlement Amount, "the mere presence of a clear sailing arrangement is not 'an independent basis for withholding settlement approval.'" *Hashemi*, 2022 WL 1872843, at *7. [citing *Briseño*, 998 F.3d at 1023]. A clear sailing agreement is "material only if there is evidence of at least one of the other two *Briseño* factors – reverters and unreasonably high attorney's fees." *Hashemi*, 2022 WL 1872843, at *7. In this case, there is no reversion. Any settlement funds remaining from uncashed settlement checks will be donated to a cy pres beneficiary. Thus, as was the case in *Hashemi*,

"any potential for collusion that could come from the [clear sailing] arrangement is offset because neither attorneys' fees are excessively high nor is there a 'reverter' clause." *Ibid.*

Finally, the parties here did not negotiate the amount of attorney's fees to be requested by Plaintiff's counsel until after they had agreed on the Gross Settlement Amount. (Karasik Decl. ¶ 11). This fact alleviates the concern posed by a clear sailing agreement – "the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." *McKinney Drobnis v. Oreschack* (9th Cir. 2021) 16 F.4th 594, 610. In *Hashemi*, the court recognized that "the fact that parties did not discuss the amount of attorneys' fees until after they negotiated and finalized all the benefits to the class . . . tends to suggest that Defendant did not offer Class Counsel attorneys' fees 'in exchange for counsel accepting a lower amount for the class.'" *Hashemi*, 2022 WL 1872843, at *7 [citing *McKinney*, 16 F.4th at 610].

Considering all of the *Briseño* factors, this Court should conclude, as the court concluded in *Hashemi*, that the Settlement, "on balance, was not collusive or based on inappropriate self-interest." *Hashemi*, 2022 WL 1872843, at *7. The fact that attorney's fees are to paid at the same time as members of the Settlement Class are distributed their settlement payments further supports the conclusion that the relief provided to members of the Settlement Class, taking into account the timing of the payment of attorney's fees, is adequate under Rule 23(e)(2)(C)(iii).

<u>Independent Agreement Requirement</u>

Rule 23(e)(2)(C)(iv) requires consideration of "any agreement required to be identified under Rule 23(e)(3)." In this case, there is no such agreement. The only agreement between the parties is the Settlement. (Karasik Decl. ¶ 24).

*Equitable Treatment of Class Members*

Rule 23(e)(2)(D) requires a court to consider whether "the proposal treats class members equitably relative to each other." In this case, the Net Settlement Amount will be equitably distributed among members of the Settlement Class on a pro rata basis in accordance with the number of workweeks each class member worked during the class period. This equitable allocation plan reflects no difference between members of the Settlement Class with regard to their claims, and the uniformity of the release applicable to all members of the Settlement Class provisions likewise demonstrate the

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

Settlement treats all members of the Settlement Class equally "relative to each other."

In sum, consideration of all the relevant factors under Rule 23(e)(2), *Hanlon* and *Briseño* leads to the conclusion that the Settlement is fair, reasonable, and adequate.

## V.    THE CLASS NOTICE COMPORTS WITH RULE 23(c)(2)

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon* (9th Cir. 1994) 18 F.3d 1449, 1454. Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 314. Here, the parties have agreed to send notice to members of the Settlement Class by first class mail. Notice by mail to members of the Settlement Class, especially after skip tracing by the Settlement Administrator to verify current mailing addresses, clearly satisfies the requirements of Rule 23(c) and due process.

Rule 23(c)(2)(B) also sets forth requirement regarding the content of the notice. The notice must concisely and clearly state in plain, easily understood language:

- the nature of the action;
- the definition of the class certified;
- the class claims, issues, or defenses;
- the class member may enter an appearance through counsel if the member so desires;
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

The proposed Notice attached as Exhibit A to the Settlement complies fully with Rule 23(c)(2)(B). Courts routinely approve class notices even when they provide only general information about a settlement. *See*, *Mendoza v. United States* (9th Cir. 1980) 623 F.2d. 1338, 1351 ("very general description of the proposed settlement" sufficient). The class notice in this case provides more than adequate notice about the Settlement.

19

## VI.  THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING AND SET A DEADLINE FOR THE FILING OF PLAINTIFF'S FEE MOTION

The Settlement requires that notice to members of the Settlement Class be mailed within 25 days after preliminary approval and that requests for exclusion or objections to the Settlement be made no later than 45 days after mailing of the class notice.  Plaintiff proposes that the final fairness hearing, where the Court rule on Plaintiff's Fees motion and motion for final approval and be scheduled on a date approximately 120 days after preliminary approval (around the beginning of February 2024).

The Court should also set a deadline for the filing of Plaintiff's Fees Motion so that members of the Settlement Class may object to the Fees Motion after it has been filed.  See, *In re Mercury Interactive Corp. Securities Litigation* (9th Cir. 2010) 618 F.3d 988, 993 (Rule 23(h) "requires a district to set the deadline for objections to counsel's fee request on a date *after* the motion and documents have been filed").  If the Settlement is preliminary approved on September 26, 2023, the objection deadline will be around December 5, 2023.  Plaintiff thus proposes that the deadline for filing his Fees Motion be set for around November 14, 2023, three weeks before the expected deadline for members of the Settlement Class to object to the Settlement.

## VIII.  CONCLUSION

After more than eight years of litigation, Plaintiff obtained a Settlement that provides a significant amount of settlement benefits for members of the Settlement Class on claims that, in the absence of a settlement, presented Plaintiff with significant risks and the prospect of many more years of litigation.  Since the claims of members of the Settlement Class meet the requirements for class certification, and the Settlement is fair, reasonable and adequate in all respects, both class certification and approval of the Settlement for the purposes of judgment are likely to be granted at the final approval hearing.  The Court should therefore grant Plaintiff's motion for preliminary approval of the Settlement for the purpose of giving members of the Settlement Class notice of the Settlement so they may object to or request exclusion from the Settlement.

Dated: June 30, 2023

By

KARASIK LAW FIRM
LAW OFFICES OF SANTOS GOMEZ
s/ *Gregory N, Karasik*
Gregory N. Karasik
Attorneys for Plaintiff