Gregory N. Karasik (SBN 115834)
**Karasik Law Firm**
16021 Aiglon St.
Pacific Palisades, CA 90272
Tel (310) 463-9761
Fax (310) 943-2582
greg@karasiklawfirm.com

Santos Gomez (SBN 172741)
**Law Offices of Santos Gomez**
1003 Freedom Boulevard
Watsonville, CA 95076
Tel (831) 228-1560
Fax (831) 228-1542
santos@lawofficesofsantosgomez.com

Attorneys for Plaintiff
JOSE MARIO MENDOZA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MARIO MENDOZA,<br><br>Plaintiff,<br>vs.<br><br>TRANS VALLEY TRANSPORT et al,<br><br>Defendants.<br>_____<br><br>And Related Cross-Action | Case No. 22-cv-07164 TLT<br><br>**NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF REVISED CLASS ACTION SETTLEMENT**<br><br>Date: October 8, 2024<br>Time: 2:00 p.m.<br>Ctrm: 9 |

Please take notice that, on October 8, 2024, at 2:00 p.m. or as soon thereafter as counsel may be heard, in Courtroom 9 of the San Francisco Courthouse for the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, plaintiff Jose Mario Mendoza ("Plaintiff") will and hereby does move for an order granting final approval of the class action settlement (the "Settlement") reached with defendants Trans Valley Transport and FTU Labor Contractors, Inc. ("Defendants") that was preliminarily approved by the Court on April 17, 2024. Specifically, Plaintiff moves for an order:

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

1.     Granting final approval of the Settlement and finding that the terms of the Settlement are fair, reasonable and adequate under Rule 23(e)(2) of the Federal Rules of Civil Procedure, including the amount of the settlement fund, the amount of distributions to class members, the procedure for giving notice to class members, the procedure for objecting to or opting out of the Settlement, and the maximum amounts allocated to incentive payments, costs and attorney's fees.

2.     Certifying for settlement purposes the Settlement Class described in the Settlement, comprised of all persons who worked as truck drivers for Trans Valley Transport and/or FTU Labor Contractors, Inc. at any time between May 26, 2011 and February 28, 2015 who did not enter into arbitration agreements.

3.     Finding that class members were provided proper and adequate notice of their rights in a manner that satisfies the requirements of due process.

4.     Directing that all class members who did not timely request exclusion from the Settlement are barred from prosecuting against the Released Parties described in the Settlement all released claims as set forth in the Settlement.

5.     Directing payment from the settlement fund of settlement administration fees to Atticus Administration in the amount of $8,300 in accordance with the Settlement.

6.     Directing payment from the settlement fund of settlement benefits to class members in accordance with the Settlement.

7.     Awarding Plaintiff the amount of $13,899.60 for costs.

8.     Awarding Plaintiff the amount of $233,333.33 for attorney's fees.

9.     Awarding Plaintiff the amount of $7,500 as a class representative enhancement payment.

10.     Entering a final judgment that:

a)     with respect to the claims on behalf of members of the Settlement Class, dismisses this action with prejudice; and

b)     with respect to the claims originally asserted by Plaintiff on behalf of truck drivers who signed arbitration agreements, who were not included within the Settlement Class, dismisses this action without prejudice.

11. Providing that, notwithstanding entry of final judgment, the Court shall retain jurisdiction in this matter for the purposes of interpreting or enforcing the Settlement or final judgment.

Plaintiff's motion is made under Rule 23(e)(2) of the Federal Rules of Civil Procedure on the grounds that the Settlement is fair, reasonable and adequate; in accordance with due process, class members were provided notice of their rights under the Settlement in a reasonable manner and were given a reasonable opportunity to exclude themselves from the Settlement; and the amounts of fees, costs and enhancement awards requested by Plaintiff are reasonable.

Plaintiff's motion is based on this Notice; the Memorandum of Points and Authorities, Declaration of Gregory N. Karasik and Declaration of Bryn Bridley submitted herewith; all other pleadings and papers on file in this action; and any oral argument or other matter that may be considered by the Court.

Dated: August 30, 2024
KARASIK LAW FIRM
LAW OFFICES OF SANTOS GOMEZ

By      s/ *Gregory N, Karasik*
Gregory N. Karasik
Attorneys for Plaintiff

Gregory N. Karasik (SBN 115834)
**Karasik Law Firm**
16021 Aiglon St.
Pacific Palisades, CA 90272
Tel (310) 463-9761
Fax (310) 943-2582
greg@karasiklawfirm.com

Santos Gomez (SBN 172741)
**Law Offices of Santos Gomez**
1003 Freedom Boulevard
Watsonville, CA 95076
Tel (831) 228-1560
Fax (831) 228-1542
santos@lawofficesofsantosgomez.com

Attorneys for Plaintiff
JOSE MARIO MENDOZA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MARIO MENDOZA,<br><br>               Plaintiff,<br>    vs.<br><br>TRANS VALLEY TRANSPORT et al,<br><br>              Defendants.<br>_____<br><br>And Related Cross-Action | Case No. 22-cv-07164 TLT<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: October 8, 2024<br>Time: 2:00 p.m.<br>Ctrm: 9 |

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    LITIGATION HISTORY ....................................................................................2

III.   SUMMARY OF SETTLMENT TERMS ..........................................................4

IV.    THE SETTLEMENT MERITS FINAL APPROVAL .......................................5

V.     THE CLAIMS ON BEHALF OF TRUCK DRIVERS WHO SIGNED ARBITRATION

       AGREEMENTS SHOULD BE DISMISSED WITHOUT PREJUDICE ........................14

VI.    CONCLUSION....................................................................................................15

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ayala v. U.S. Express Enterprises*
  (C.D. Cal 2020) 2020 WL 3071707 ................................................................. 9

*Briseño v. Henderson*
  (9th Cir. 2021) 998 F.3d 1014 .................................................................. 6

*Cardenas v. McLane Food Services, Inc.*
  (C.D. Cal. 2011) 796 F.Supp.2d 1246 .................................................... 8,9

*Craft v. County of San Bernardino*
  C.D. Cal. 2008) 624 F.Supp.2d 1113 .................................................... 12

*Garcia v. Superior Court*
  (2022) 80 Cal.App.5th 63 ........................................................................ 10

*Hanlon v. Chrysler Corp.*
  (9th Cir. 1998) 150 F. 3d 1011
  *overruled on other grounds,*
  *Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338 ........................... 5,12

*Hashemi v. Bosley, Inc.*
  (C.D. Cal. 2022) 2022 WL 1827843 ...................................................... 6,13

*In re Cedant Corp., Derivative Action Litigation*
  (D. N.J. 2002) 232 F.Supp.2d 327 ............................................................ 8

*In re Immune Response Securities Litigation*
  (S.D. Cal. 2007) 497 F.Supp.2d 1166 ...................................................... 7

*In re Lifelock, Inc. Marketing and Sales Practices Litigation*
  (D. Ari. 2010) 2010 WL 3715138 ............................................................ 14

*In re Pacific Enterprises Security Litigation*
  (9th Cir. 1995) 47 F.3d 373 ..................................................................... 12

*International Brotherhood of Teamsters, Local 2785 v. Federal Motor Carrier Safety Administration*
  (9th Cir. 2021) 986 F.3d 841 ................................................................... 10

*Kaupelis v. Harbor Freight Tools*
  (C.D. Cal. 2021) 2021 WL 4816833 ....................................................... 11

*Lalli v. First Team Real Estate – Orange County*
  (C.D. Cal. 2022) 2022 WL 8207530 ...................................................... 5,7,11

*Linney v. Cellular Alaska Partnership*
  (9th Cir. 2001) 244 F.3d 1152 .................................................................. 7

*McKinney Drobnis v. Oreschack*
  (9th Cir. 2021) 16 F.4th 594 .................................................................... 13

*Mendoza v. Trans Valley Transport*
  (2022) 75 Cal.App.5th 748 ........................................................................ 2

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*
(9th Cir. 1982) 688 F.2d 615 .................................................................... 6

*Quezada v. Con-Way Freight, Inc.*
(N.D. Cal. 2012) 2012 WL 2847609 ........................................................ 8

*Paul, Johnston, Alston & Hunt v. Graulty*
(9th Cir. 1989) 886 F.2d 268 .................................................................. 12

*Pearson v. Ecological Science Corp.*
(5th Cir. 1975) 522 F.2d 171 ................................................................. 15

*Reynolds v. National Football League*
(8th Cir. 1978) 584 F.3d 280 ................................................................. 14

*Ridgeway v. Wal-Mart Stores, Inc.*
(N.D. Cal. 2015) 107 F.Supp.3d 1044 ..................................................... 9

*Salter v. Quality Carriers*
(C.D. Cal. 2021) 2021 WL 5049054 ........................................................ 9

*Satchell v. Fed Express Corp.*
(N.D. Cal. 2007) 2007 WL 11144010 ...................................................... 7

*Singer v. Becton Dickinson and Co.*
(S.D. Cal. 2010) 2010 WL 2196104 ....................................................... 12

*Six (6) Mexican Workers v. Arizona Citrus Growers*
(9th Cir. 1990) 904 F.2d 1301 .............................................................. 12

*Staton v. Boeing Co.*
(9th Cir. 2003) 327 F.3d 938 .................................................................. 5

*Valiente v. Swift Transp. Co. of Arizona, LLC*
(9th Cir. 2022) 54 F.4th 581 .............................................................. 3,10

*Vasquez v. Coast Valley Roofing, Inc.*
(E.D. Cal. 2010) 266 F.R.D. 482 ...................................................... 11,12

*Vizcaino v. Microsoft Corp.*
(9th Cir. 2002) 290 F.3d 1043 .............................................................. 12

*West v. Circle K. Stores, Inc.*
(E.D. Cal. 2006) 2006 WL 8458679 ...................................................... 11

*Westfall v. Ball Metal Beverage Container Corporation*
(E.D. Cal. 2021) 2021 WL 4206851 ....................................................... 12

**STATE STATUTES**

California Labor Code

    Section 201............................................................................................... 1

    Section 203............................................................................................... 1

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

Section 203......................................................................................................1,9

Section 226......................................................................................................1,9

Section 1197......................................................................................................1

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 23(c)(1)(C)...................................................................................................8

Rule 23(e)........................................................................................................5,15

Rule 23(e)(2).................................................................................................1,5,6,14

Rule 23(e)(2)(A)...................................................................................................6

Rule 23(e)(2)(B)...................................................................................................7

Rule 23(e)(2)(C)...................................................................................................7

Rule 23(e)(2)(C)(i)...............................................................................................8

Rule 23(e)(2)(C)(ii).............................................................................................11

Rule 23(e)(2)(C)(iii)........................................................................................11,13

Rule 23(e)(2)(C)(iv).............................................................................................13

Rule 23(e)(2)(D).................................................................................................14

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

## I.   INTRODUCTION

Plaintiff Jose Mario Mendoza  ("Plaintiffs") asserts class action claims against defendants Trans Valley Transport and FTU Labor Contractors, Inc. ("Defendants") based on the principal contention that truck drivers who worked for Defendants were paid trip pay that constituted piece rate wages, such that Defendants were required to pay Plaintiff and other truck drivers minimum wages, separately from their piece rate wages, for all their non-driving work activities.  Based on that central contention, Plaintiff primarily asserts claims against Defendants for failure to pay minimum wages in violation of Labor Code Section 1197, failure to provide accurate wage statements in violation of Labor Code Section 226, and failure to pay all wages owed upon termination in violation of Labor Code Section 201 or 202.  Plaintiff also contends that Defendants' violations of the Labor Code constitute unfair competition.

After more than 8 years of litigation – during most of which the case was pending in state court and delayed by appellate court proceedings following Defendants' appeal from an order at the outset of the case denying their motion to compel arbitration -- the parties ultimately reached a settlement on behalf of truck drivers who did not sign arbitration agreements.  Pursuant to the Settlement, Defendants are required to pay a total of $700,000 on a non-reversionary basis in exchange for a release of class member claims.  Under the Settlement, the entirety of the Net Settlement Amount will be distributed to class members who did not request exclusion from the Settlement.

On April 17, 2024 the Court granted preliminary approval of the Settlement; on June 21, 2024 the Settlement Administrator mailed out the class notice to 154 class members; and on June 18, 2024 Plaintiff filed his Fees Motion (which was posted on the Settlement Administrator website), pursuant to which Plaintiff requested $233,333.33 for attorney's fees, $13,899.60 for costs, and an enhancement payment of $7,500.  In response, no class members objected to the Settlement or the Fees Motion and no class members requested exclusion from the Settlement.

Plaintiff now moves under Rule 23(e)(2) of the Federal Rules of Civil Procedure for final approval of the Settlement.  For the reasons set forth below, the Settlement is fair, reasonable and adequate; and as set forth in the Fees Motion previously filed by Plaintiff the amounts of costs, fees and enhancement paymens requested by Plaintiff is reasonable.  Plaintiff respectfully requests that the

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

Court grant final approval to the Settlement and award Plaintiff the full amount of costs and fees and enhancement payment requested.

## II. LITIGATION HISTORY

Plaintiff filed a complaint against TVT in state court on May 26, 2015 and Plaintiff filed a First Amended Complaint in state court (which added FTU as a defendant) in September 2015. In the First Amended complaint, Plaintiff asserted class action claims on behalf of persons who worked for Defendants as truck drivers for Failure to Pay Minimum Wages, Failure to Provide Rest Periods, Failure to Provide Meal Periods, Unfair Competition, Failure to Provide Accurate Wage Statements, and Failure to Pay All Wages Owed Upon Termination. Subsequently, FTU filed a cross-complaint against PeopLease, LLC for indemnity. FTU contends that PeopLease, from whom FTU leased employees, was a joint employer of the truck drivers who worked for FTU. (Karasik Decl. ¶ 6).

After responding to interrogatories and document requests propounded by Plaintiff, Defendants filed a motion to compel arbitration based on an arbitration policy contained in FTU's handbook which the trial court denied without prejudice on November 22, 2016. The trial court denied with prejudice on January 3, 2017 a second motion to compel arbitration filed by Defendants. More than five years later, the court of appeal upheld the trial court's ruling in the published decision *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748. The court of appeal held that the arbitration policy in FTU's handbook did not create a binding agreement to arbitrate. (Karasik Decl. ¶ 7).

After the court of appeal decision, the parties participated in a mediation before Lisa Klerman on September 23, 2022. Before the mediation, the parties engaged in a substantial amount of discovery, including interrogatories and document requests propounded and responded to by both parties and the taking of Plaintiff's deposition by Defendants. In connection with their discovery responses, Defendants produced to Plaintiff nearly 1,000 pages of documents. Defendants also provided Plaintiff, informally for the purposes of mediation, a substantial amount of class information that enabled Plaintiff's counsel to calculate Defendants' potential liability, including the number of putative class members who had not signed arbitration agreements, the number of putative class members who had signed arbitration agreements, and the number of workweeks worked by putative class members. (Karasik Decl. ¶ 8).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

That mediation did not result in a settlement. After the unsuccessful mediation, Plaintiff propounded additional written discovery, including additional interrogatories and requests for admissions. On November 15, 2022, before their responses to discovery was due, Defendants removed the case to federal court on the grounds of diversity jurisdiction under the Class Action Fairness Act. Defendants subsequently served their responses to the additional written discovery that had been propounded by Plaintiff shortly before removal. (Karasik Decl. ¶ 9).

After the case was removed to federal court, the parties agreed to have a settlement conference before the Honorable Magistrate Judge Virginia K. DeMarchi, which was scheduled for May 12, 2023. Prior to the settlement conference, Plaintiff agreed to dismiss his claims that Defendants failed to provide truck drivers with meal periods or rest periods because on November 23, 2022, the Ninth Circuit in *Valiente v. Swift Transp. Co. of Arizona, LLC* (9th Cir. 2022) 54 F.4th 581 held that the FMCSA's determination, that federal law preempts California meal and rest period laws with respect to truck drivers engaged in interstate commerce, applies retroactively. (Karasik Decl. ¶ 10).

At the settlement conference on May 12, 2023, the parties exchanged proposals and counterproposals during arms-length bargaining that lasted a full day without reaching agreement on the terms of a settlement. However, because the parties had made substantial progress towards a settlement, they agreed to another half day for a settlement conference with Judge DeMarchi that was scheduled for May 17, 2023. At the settlement conference on May 17, 2023, the parties ultimately reached agreement on the material terms of a class action settlement. Thereafter, the parties prepared formal settlement documents that, after negotiation of various settlement details, culminated in the execution of the parties' Stipulation Regarding Class Action Settlement and Release of Claims. Settlement details that were not negotiated until after the parties reached agreement on the Gross Settlement Amount included the maximum amounts of attorney's fees, costs and incentive payment that could be requested by Plaintiff without objection from Defendants. (Karasik Decl. ¶ 11).

Plaintiff filed a motion for preliminary approval on June 20, 2023 and on December 19, 2023 the Court issued an order granting the motion in part and denying the motion in part. The Court ruled that Plaintiff had met the requirements for conditional class certification but failed to show that the proposed settlement was fair, adequate and reasonable. Accordingly, the Court denied Plaintiff's motion for

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

preliminary approval without prejudice and ordered that a supplemental motion for preliminary approval be filed to address the deficiencies and omissions discussed in the Court's order. (Karasik Decl. ¶ 12).

The parties thereafter entered into a stipulation to revise the original settlement and, in connection with a motion for preliminary approval of the revised settlement (the "Settlement") filed on January 25, 2024, provided supplemental briefing to address the Court's concerns. On April 17, 2024 the Court granted preliminary approval of the Settlement; on June 21, 2024 the Settlement Administrator mailed out the class notice to 154 class members; and on June 18, 2024 Plaintiff filed his Fees Motion (which was posted on the Settlement Administrator website), pursuant to which Plaintiff requested $233,333.33 for attorney's fees, $13,899.60 for costs, and an enhancement payment of $7,500. In response, no class members objected to the Settlement or the Fees Motion, and no class members requested exclusion from the Settlement. (Karasik Decl. ¶ 13).

## III.   SUMMARY OF SETTLEMENT TERMS

The material terms of the Settlement are as follows:

- The Settlement Class is comprised of all persons who worked as truck drivers for Trans Valley Transport and/or FTU Labor Contractors, Inc. at any time between May 26, 2011 and February 28, 2015 who did not enter into arbitration agreements. There are 154 class members.

- Defendants will pay the Gross Settlement Amount of Seven Hundred Thousand Dollars ($700,000) in exchange for a release of class member claims.

- After settlement administration expenses, attorney's costs and fees, and a service payment are deducted from the Gross Settlement Amount, the entirety of the remaining funds ("the Net Settlement Amount") shall be distributed to class members on a pro-rata basis. The amount each participating class member receives will be based on the number of workweeks worked during the class period.

- Defendants will pay the employer's share of payroll taxes separately from the Gross Settlement Amount.

- Defendants will not oppose an application by Plaintiff for an award of costs of up to $15,000, of attorney's fees up to $233,333.33 (33.3% of the Gross Settlement Amount), or a service payment to Plaintiff up to Seven Thousand Five Hundred Dollars ($7,500).

**IV.    THE SETTLEMENT MERITS FINAL APPROVAL**

Approval of class action settlement is governed by Rule 23(e) of the Federal Rules of Civil Procedure, which was most recently amended in 2018.  Rule 23(e)(2) now provides that a class action settlement may be approved "only after a hearing and only on finding that it is fair, reasonable and adequate." *Lalli v. First Team Real Estate – Orange County* (C.D. Cal. 2022) 2022 WL 8207530, at *3.

For making this determination, Rule 23(e)(2) now requires Courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Prior to the 2018 amendments to Rule 23, the Ninth Circuit established that assessment of a class action settlement "requires the district court to balance a number of factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members."  *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F. 3d 1011, 1026, *overruled on other grounds*, *Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338.  The *Hanlon* factors are not an "exhaustive list" and the Ninth Circuit in *Hanlon* did not suggest which factors are the most important.  *See, Staton v. Boeing Co.*  (9th Cir. 2003) 327 F.3d 938, 959.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and

the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Commission of City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615, 625.

More recently, the Ninth Circuit has ruled that a district court must "scrutinize the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: 1) whether counsel "received a disproportional distribution of the settlement"; 2) whether the parties agreed to a "clear sailing agreement;" and 3) whether the settlement includes a "kicker" or "reverter" clause. *Briseño v. Henderson* (9th Cir. 2021) 998 F.3d 1014, 1023. Because the 2018 amendments to Rule 23 were not intended to displace factors to be considered pursuant to preexisting judicial decisions, district courts within the Ninth Court ruling on motions for approval of class action settlements now consider a combination of the Rule 23(e)(2) factors, the relevant *Hanlon* factors and the *Briseño* factors. *See*, *Lalli,* 2022 WL 8207530, at *3; *Hashemi v. Bosley, Inc.* (C.D. Cal. 2022) 2022 WL 18278431, at *3-7. Here, consideration of all the relevant factors leads to the conclusion that the Settlement is fair, reasonable, and adequate under Rule 23(e)(2).

*Adequate Representation*

Rule 23(e)(2)(A) requires a court to consider whether "the class representatives and class counsel have adequately represented the class." In this case Plaintiff and his counsel have vigorously and adequately represented the interests of members of the Settlement Class for more than eight years. (Karasik Decl. ¶ 15). Plaintiff's counsel defeated Defendants' motion to compel arbitration, prevailed on Defendants' appeal from the denial of their motion to compel arbitration, engaged in substantial discovery, attempted to reach a settlement at a private mediation, and eventually negotiated a settlement at the settlement conference presided over by Magistrate Judge DeMarchi. As explained in the declaration Plaintiff submitted in support of his Fees Motion, Plaintiff assisted his counsel throughout the entirety of this ligation, by providing information and documents necessary for discovery responses, sitting for deposition, and participating in the mediation and settlement conferences before Judge DeMarchi. The fact that Plaintiff and his counsel reached a settlement only after completing a significant amount of discovery and overcoming Defendants' arbitration defense at both the trial and appellate level demonstrates that Plaintiff and his counsel have adequately represented the Settlement Class.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

*Arm's Length Negotiations and Extent of Discovery*

Rule 23(e)(2)(B) requires a court to consider whether a class action settlement "was negotiated at arm's length." A related factor under *Hanlon* is the "extent of discovery completed." In this case, agreement on the material terms of the Settlement was only reached after a settlement conference with Judge DeMarchi held over the course of a day and a ½ (a full day on May 12, 2023 and a ½ day on May 17, 2023); and the settlement conference was preceded by substantial discovery (including Defendant producing nearly 1,000 pages of documents and Plaintiff sitting for deposition) and Defendants providing Plaintiff's counsel with information informally, in connection with the unsuccessful mediation before Lisa Klerman on September 23, 2022, that enabled Plaintiff's counsel to calculate Defendants' potential liability.

The fact that a settlement results from arm's length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership* (N.D. Cal. 1997) 1997 WL 450064, at *5. *See also, In re Immune Response Securities Litigation* (S.D. Cal. 2007) 497 F. Supp.2d 1166, 1174 (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). The presence and assistance of Judge DeMarchi in the settlement process further demonstrates that the Settlement was not collusive but was the product of informed, arm's length negotiations. "The presence and assistance of an experienced mediator in the settlement process strongly suggests 'that the settlement is not collusive.'" *Lalli,* 2022 WL 8207530 at *4 [citing *Satchell v. Fed Express Corp.* (N.D. Cal. 2007) 2007 WL 11144010, at *4].

*Adequate Relief for The Class*

Rule 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is adequate" taking into account various factors. Plaintiff discusses those factors below along with factors relevant to the reasonableness, fairness or adequacy of a class action settlement under *Hanlon*.

<u>The Amount Offered in Settlement</u>

One of the factors to be considered under *Hanlon* is the "amount offered in settlement." In this case, the Gross Settlement Amount of $700,000 represents a substantial recovery for members of the Settlement Class. Although Plaintiff's counsel initially calculated that Defendants' maximum potential liability for unpaid wages to members of the Settlement Class was approximately $2,800,000

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

Plaintiff's counsel later determined that Defendant's maximum potential liability for unpaid minimum wages was approximately $2,556,209 which means that the Gross Settlement Amount of $700,000 reflects a recovery of more than 27% of the maximum amount of damages for unpaid wages that might have been recovered if Plaintiff had prevailed at trial (Karasik Decl. ¶ 16).  That is a very good result. Courts have often approved class action settlements that provide a much smaller fraction of recovery. *See, e.g., In re Cedant Corp., Derivative Action Litigation* (D. N.J.  2002) 232 F.Supp.2d 327 (approving settlement which provided 2% value compared to maximum possible recovery).

<u>The Risks and Duration of Litigation and the Strength of Plaintiff's Claims</u>

Rule 23(e)(2)(C)(i) requires a court to consider "the costs, risks, and delay of trial and appeal" and the *Hanlon* factors similarly include the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status throughout the trial.  For several reasons, the Settlement reflects a particularly good result in light of the significant litigation risks faced by Plaintiff with respect to both class certification and the merits of his claims which, in the absence of a settlement, would have taken years to litigate.

First, although Defendants do not oppose class certification for settlement purposes, Defendants would have opposed a motion for class certification otherwise.  Plaintiff thus faced a significant risk that he would not prevail on a contested motion for class certification.  Even if Plaintiff prevailed on a contested motion for class certification, Plaintiff would still face the risk of Defendant filing a motion for decertification.  Under Rule 23(c)(1)(C) district courts have discretion to decertify a class at any stage of litigation before a final judgment.  If the Court either denied Plaintiff's motion for class certification or later granted a motion for decertification filed by Defendants, members of the Settlement Class would have recovered absolutely nothing. (Karasik Decl. ¶ 17).

Second, Plaintiff faced even greater risks with respect to the merits of his claims because case law regarding piece rate wages for truck drivers is mixed and arguably inconsistent.  On the one hand, cases like *Cardenas v. McLane Food Services, Inc.* (C.D. Cal. 2011) 796 F.Supp.2d 1246 and *Quezada v. Con-Way Freight, Inc.* (N.D. Cal. 2012) 2012 WL 2847609 support Plaintiff's contention that Defendants' compensation system is, on its face, unlawful.  *Cardenas* holds that "a **piece-rate** formula that does not compensate directly for all **time** worked does not comply with California Labor Codes,

even if, average out, it would **pay** at least minimum wage for all hours worked." *Cardenas*, 796 F.Supp.2d at 1251 (emphasis in the original). Adopting the reasoning of *Cardenas*, the court in *Quezada* ruled that an employer may not "'build in' time for non-driving tasks into a piece rate compensation system." *Quezada*, 2012 WL 2847609, at *6. The reasoning of *Cardenas* was also followed in *Ridgeway v. Wal-Mart Stores, Inc.* (N.D. Cal. 2015) 107 F.Supp.3d 1044, 1052-1053, where the court ruled that "a piece rate formula that does not compensate directly for all time worked does not comply with California Labor Codes." (Karasik Decl. ¶ 18).

On the other hand, *Salter v. Quality Carriers* (C.D. Cal. 2021) 2021 WL 5049054 and *Ayala v. U.S. Express Enterprises* (C.D. Cal 2020) 2020 WL 3071707 arguably support Defendants' contention that their compensation system is lawful because it is permissible to compensate a driver for non-driving tasks by a piece rate system that pays a driver for all tasks (driving and non-driving) in connection with delivering a load. *Salter* and *Ayala* are premised on the notion than an employer and employee can agree on what tasks are to be compensated for by a "piece" rate. The legal analysis of *Salter* and *Ayala* appears to conflict with the legal analysis in *Cardenas*, under which "it is irrelevant whether a pay formula was i*ntended* to compensate" for all non-driving activities "or even if employees believed it covered those activities." *Cardenas*, 796 F.Supp.2d at 1253 (Karasik Decl. ¶ 19).

The uncertainty of how California law applies to Defendants' compensation system not only posed a significant risk that Plaintiff would not prevail on his claims for unpaid wages but resulted in Plaintiff's derivative claims for wage statement penalties under Labor Code Section 226 and waiting time penalties under Labor Code Section 203 having virtually no settlement value. Civil penalties under Section 226 can only be recovered for a "knowing and intentional" failure to provide accurate wage statement. Statutory penalties under Section 203 can only be recovered for a "willful" failure to pay all wages owed. Since at least some case law arguably supports Defendants' contention that its compensation system is lawful, Defendants have strong "good faith" arguments to defeat Plaintiff's claims for wage statement and waiting time penalties. (Karasik Decl. ¶ 20).

Absent a settlement, Plaintiff faced the prospect of costly and further lengthy litigation, including another appeal, over complex issues for which case law does not presently provide clear cut answers. Indeed, changes in the law had a significant impact on Plaintiff's claims for failure to provide

meal periods and rest periods. Although those claims were viable when the complaint was filed in May 2015, on January 15, 2021 the Ninth Circuit, in *International Brotherhood of Teamsters, Local 2785 v. Federal Motor Carrier Safety Administration* (9th Cir. 2021) 986 F.3d 841 upheld the FMCSA's determination that federal law preempts California's meal and rest break laws as applied to truck drivers engaged in interstate commerce. Subsequently, on June 21, 2022, the California Court of Appeal held in *Garcia v. Superior Court* (2022) 80 Cal.App.5th 63, that the FMCSA's preemption decision did not apply retroactively. But the law changed again when, on November 23, 2022, the Ninth Circuit in *Valiente v. Swift Transp. Co. of Arizona, LLC* (9th Cir. 2022) 54 F.4tt 581 ruled that the FMCSA's preemption decision did apply retroactively. (Karasik Decl. ¶ 21).

Given the unsettled nature of the law and the seemingly conflicting court decisions regarding piece rate wages for truck drivers, Plaintiff faced a significant risk that changes in the law might adversely affect his claims for unpaid wages just as unexpected legal developments doomed his meal period and rest period claims. Indeed, an appeal in the *Salter* case is presently pending in the Ninth Circuit. (Karasik Decl. ¶ 22).

### Defendants' Financial Condition

Implicit within the risks of litigating a case through trial, a consideration under *Hanlon*, is potential limitations on the defendant's ability to pay a final judgment. Plaintiff faced that risk in this case. As substantiated by the Declaration of Eric Triolo submitted in connection with Plaintiff's initial motion for preliminary approval, Defendants as a practical matter could not afford a Gross Settlement Amount greater than $700,000 and would be forced into bankruptcy if Plaintiff were awarded the full amount of $2.8 million claimed as damages for unpaid wages. In the view of Plaintiff's counsel, it was reasonable for Plaintiff to agree to a Settlement that recovered as much as Defendants could afford to pay instead of taking the risk that, even if Plaintiff recovered a greater amount pursuant to a judgment after years of litigation, the judgment would not be collectible because Defendants would file for bankruptcy. (Karasik Decl. ¶ 23).

### Experience and Views of Counsel

The experience and views of counsel are a relevant consideration under *Hanlon*. In this case, the experience and views of Plaintiff's counsel weigh strongly in favor of approving the Settlement.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

Based on the estimated Net Settlement Amount of each member of the Settlement Class who does not request exclusion from the Settlement stands to receive, on average, a gross settlement payment of more than $2,800. In light of the uncertainty, cost and risk of continued litigation, coupled with the limitations imposed by Defendants' financial condition, a class-based settlement providing members of the Settlement Class with an average gross settlement payment of more than $2,800 provides them with "adequate relief" and that it would be in their best interests for the Settlement to be approved. (Karasik Decl. ¶ 24).

The opinions of Plaintiff's counsel are entitled to "considerable weight." *West v. Circle K. Stores, Inc.* (E.D. Cal. 2006) 2006 WL 8458679, at *5. *See also, Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482, 489 (courts should give great weight to counsel's recommendations). The opinion of Plaintiff's counsel that the Settlement is fair and reasonable, and that approval of the Settlement would best serve the interests of members of the Settlement Class weighs strongly in favor of concluding that the Settlement provides adequate relief.

<u>Method for Distributing Settlement Benefits</u>

Rule 23(e)(2)(C)(ii) requires a court to consider "the effectiveness of any proposed method of distributing relief to the class." The method for distributing settlement benefits to members of the Settlement Class supports the conclusion that the Settlement provides them relief that is adequate because members of the Settlement Class need not submit claims to receive their share of settlement benefits. Each member of the Settlement Class will automatically be sent a settlement payment that is mailed to his/her last known address (after skip tracing is performed by the Settlement Administrator).

<u>Attorney's Fees</u>

Rule 23(e)(2)(C)(iii) requires a court to consider "the terms of any proposed award of attorney's fees, including the timing of payment." Courts have construed this requirement as a dictate to "be on watch" for the three "red flags" identified in *Briseño* as tending to show collusion. *Lalli*, 2022 WL 8207530, at *3. *See also*, *Kaupelis v. Harbor Freight Tools* (C.D. Cal. 2021) 2021 WL 4816833, at *10 (court must scrutinize proposed award of attorney's fees "for three [*Briseño*] factors that tend to show collusion"). Analysis of the *Briseño* factors in this case leads to the conclusion that Plaintiff's request for attorney's fees is not excessive or indicative of collusion.

Pursuant to the Settlement, Plaintiff has requested attorney's fees equal to 33.3% of the Gross Settlement Amount without objection from Defendants. The Ninth Circuit has established the rate of 25% as the "benchmark" for an award of attorney's fees in common fund cases. *See*, e.g., *Paul, Johnston, Alston & Hunt v. Graulty* (9th Cir. 1989) 886 F.2d 268, 272; *Six (6) Mexican Workers v. Arizona Citrus Growers* (9th Cir. 1990) 904 F.2d 1301, 1311. But the Ninth Circuit has identified four factors that warrant an adjustment of the benchmark rate: "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of non-payment." *Hanlon*, 150 F.3d at 1029. *See also*, *In re Pacific Enterprises Security Litigation* (9th Cir. 1995) 47 F.3d 373, 379 (33.3% rate justified by "complexity of the issues and the risks"); *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1048 (28% rate justified because plaintiff achieved "exceptional results" and case was "extremely risky for class counsel"). Application of these factors typically results in adjusting the benchmark rate upwards. *See*, *e.g.*, *Singer v. Becton Dickinson and Co.* (S.D. Cal. 2010) 2010 WL 2196104, at *8 (noting awards in class action cases where fees ranged from 30.3% to 40%); *Craft v. County of San Bernardino* (C.D. Cal. 2008) 624 F.Supp.2d 1113, 1125 (25% "is substantially below the average class fund fee nationally"); *Vasquez*, 266 F.R.D. at 492 (33.3% rate justified by "good result achieved for Plaintiffs, the risk counsel took in pursuing the matter, and the skill they exhibited in prosecuting the case). And, as explained in Plaintiff's Fees Motion, all these factors support an award of attorney's fees at the 33.3% rate in this case.

Especially under the circumstances of this case justifying an upwards adjustment of the "benchmark" rate, a fee award equal to 33.3% of a common fund is by no means so high as to make a fee award "disproportional" under *Briseño*. For example, in *Westfall v. Ball Metal Beverage Container Corporation* (E.D. Cal. 2021) 2021 WL 4206851, *5, the court noted that other courts "have approved fees at 33 percent of the settlement fund for matters involving state law claims." *See also, Vasquez*, 266 F.R.D. at 491 (citing to class actions where fee awards ranged from 30% to 40%). The court in *Westfall* thus concluded that a rate of 33% did not raise any red flag under *Briseño*. "While 33 percent is on the higher side, it is a far cry from the concerning 88 percent fee in *Briseño*. *Westfall*, 2021 WL 4206851, at *5. Plaintiff's request for fees at the rate of 33.3% of the Gross Settlement Amount likewise is not "unreasonably high," "disproportional" or otherwise indicative of any collusion.

Although the Settlement does provide that Defendants will not object to a request for attorney's fees up to 33.3% of the Gross Settlement Amount, "the mere presence of a clear sailing arrangement is not 'an independent basis for withholding settlement approval.'" *Hashemi*, 2022 WL 1872843, at *7. [citing *Briseño*, 998 F.3d at 1023]. A clear sailing agreement is "material only if there is evidence of at least one of the other two *Briseño* factors – reverters and unreasonably high attorney's fees." *Hashemi*, 2022 WL 1872843, at *7. In this case, there is no reversion. Any settlement funds remaining from uncashed settlement checks will be donated to a cy pres beneficiary. Thus, as was the case in *Hashemi*, "any potential for collusion that could come from the [clear sailing] arrangement is offset because neither attorneys' fees are excessively high nor is there a 'reverter' clause." *Ibid.*

Finally, the parties here did not negotiate the amount of attorney's fees to be requested by Plaintiff's counsel until after they had agreed on the Gross Settlement Amount. (Karasik Decl. ¶ 11). This fact alleviates the concern posed by a clear sailing agreement – "the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." *McKinney Drobnis v. Oreschack* (9th Cir. 2021) 16 F.4th 594, 610. In *Hashemi*, the court recognized that "the fact that parties did not discuss the amount of attorneys' fees until after they negotiated and finalized all the benefits to the class . . . tends to suggest that Defendant did not offer Class Counsel attorneys' fees 'in exchange for counsel accepting a lower amount for the class.'" *Hashemi*, 2022 WL 1872843, at *7 [citing *McKinney*, 16 F.4th at 610].

Considering all of the *Briseño* factors, this Court should conclude, as the court concluded in *Hashemi*, that the Settlement, "on balance, was not collusive or based on inappropriate self-interest." *Hashemi*, 2022 WL 1872843, at *7. The fact that attorney's fees are to paid at the same time as members of the Settlement Class are distributed their settlement payments further supports the conclusion that the relief provided to members of the Settlement Class, taking into account the timing of the payment of attorney's fees, is adequate under Rule 23(e)(2)(C)(iii).

Independent Agreement Requirement

Rule 23(e)(2)(C)(iv) requires consideration of "any agreement required to be identified under Rule 23(e)(3)." In this case, there is no such agreement. The only agreement between the parties is the Settlement. (Karasik Decl. ¶ 25).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT

*Equitable Treatment of Class Members*

Rule 23(e)(2)(D) requires a court to consider whether "the proposal treats class members equitably relative to each other."  In this case, the Net Settlement Amount will be equitably distributed among members of the Settlement Class on a pro rata basis in accordance with the number of workweeks each class member worked during the class period. This equitable allocation plan reflects no difference between members of the Settlement Class with regard to their claims, and the uniformity of the release applicable to all members of the Settlement Class provisions likewise demonstrate the Settlement treats all members of the Settlement Class equally "relative to each other."

In sum, consideration of all the relevant factors under Rule 23(e)(2), *Hanlon* and *Briseño* leads to the conclusion that the Settlement is fair, reasonable, and adequate.

*Reaction of Class Members*

No class members have requested exclusion from the Settlement and not a single class member has objected to the Settlement. (Karasik Decl. ¶ 13).  These facts demonstrate an overwhelmingly positive response to the Settlement that strongly supports final approval.  *See, e.g., Reynolds v. National Football League* (8th Cir. 1978) 584 F.3d 280 (16 objectors out of 5,400 class members provided strong evidence of no significant dissatisfaction with settlement); *In re Lifelock, Inc. Marketing and Sales Practices Litigation* (D. Ari. 2010) 2010 WL 3715138, *6 (relatively few objections and requests for exclusion support approval).

In sum, consideration of all the relevant factors under Rule 23(e)(2), *Hanlon* and *Briseño* leads to the conclusion that the Settlement is fair, reasonable, and adequate.

## V.    THE CLAIMS ON BEHALF OF TRUCK DRIVERS WHO SIGNED ARBITRATION AGREEMENTS SHOULD BE DISMISSED WITHOUT PREJUDICE

Plaintiff initially asserted claims on behalf of all truck drivers who worked for Defendant during the time periods applicable to the causes of action asserted by Plaintiff.  Because Plaintiff would not have been able to certify a class that included truck drivers who signed arbitration agreements, however, those truck drivers are not included in the Settlement Class.  Thus, while the claims asserted on behalf of class members should be dismissed with prejudice, the uncertified claims on behalf of truck drivers who signed arbitration agreements should be dismissed without prejudice.

Since truck drivers who signed arbitration agreements are not class members in this case, their rights are not affected by the Settlement and Rule 23(e) of the Federal Rules of Civil Procedure does not require that they be given notice of the Settlement or the dismissal without prejudice of the claims Plaintiff initially asserted on their behalf but later abandoned. Rule 23(e) only requires notice of a settlement or dismissal to members of a "certified class" and, with respect to an action that "cannot properly be maintained as a class action the notice requirements of Rule 23(e) do not apply" when a settlement or dismissal "do not directly affect adversely the rights of individuals not before the court." *Pearson v. Ecological Science Corp.* (5th Cir. 1975) 522 F.2d 171, 177.

## VI.   CONCLUSION

Plaintiff obtained a Settlement that provides a significant amount of settlement benefits for members of the Settlement Class on claims that, in the absence of a settlement, presented Plaintiff with significant risks, including the prospect of many more years of litigation and the likelihood of an uncollectible judgment. Since, the claims asserted on behalf of class members meet the requirements for class certification, and the Settlement is fair, reasonable and adequate in all respects, both class certification and approval of the Settlement for the purposes of judgment should be granted at the final approval hearing. In connection with granting final approval of the Settlement, the Court should also grant Plaintiff's Fee Motion in its entirety and award Plaintiff the full amounts of fees, costs and enhancement payments requested.

Dated: August 30, 2024

                                        KARASIK LAW FIRM
                                        LAW OFFICES OF SANTOS GOMEZ


                               By      s/ *Gregory N, Karasik*
                                        Gregory N. Karasik
                                        Attorneys for Plaintiff

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 22-cv-07164 TLT