UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MARIO MENDOZA,<br><br>Plaintiff,<br><br>v.<br><br>TRANS VALLEY TRANSPORT, et al.,<br><br>Defendants. | Case No. 22-cv-07164-TLT<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENT**<br><br>Re: Dkt. Nos. 53, 57 |

The Court previously granted a motion for preliminary approval of Class Action Settlement between Plaintiff Jose Mario Mendoza ("Plaintiff") and Defendants Trans Valley Transport and FTU Labor Contractors, Inc. ("Defendants"). *See* ECF 46. As directed by the Court's preliminary approval order, on June 18, 2024, Plaintiff filed his motion for awards of attorneys' fees, costs, and enhancement award. ECF 53. On August 30, 2024, Plaintiff filed motion for final settlement approval. ECF 57. The Court held a hearing and took arguments from the parties on October 8, 2024.

Having considered the motion briefing, the terms of the Settlement Agreement, the objections and response thereto, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motion for final approval. The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representative and class counsel are confirmed.

The Court **GRANTS** motion for attorneys' fees, costs, and enhancement award. The Court **ORDERS** that class counsel shall be paid the amount of $233,333.33 in attorneys' fees and $13,899.60 in litigation costs, the class administrator shall be paid $8,300.00, and class representative and named Plaintiff Mendoza shall be paid $7,500.00 incentive award.

**I. BACKGROUND**

    **A. Procedural History**

Plaintiff Jose Mario Mendoza filed the putative class action complaint on May 26, 2015, against defendant Trans Valley Transport, in the Superior Court of California, County of Santa Clara. Not. of Rem., ECF 1, Ex. A. The amended pleadings allege various violations of the California Labor Code and Wage Orders for (1) failure to pay minimum wages (Labor Code Sections 1194 & 1197); (2) failure to provide meal and rest periods (Labor Code Section 226.7 & Wage Order 9); failure to provide accurate wage statements (Labor Code Section 226(a)); failure to pay all wages owed upon termination (Labor Code Sections 201 & 202); and derivatively, a violation of California's Unfair Competition Law ("UCL") under Business and Professions Code § 17200 et seq. The parties reached a settlement prior to class certification with the assistance of Magistrate Judge Virginia DeMarchi on May 17, 2023. ECF 27. The Settlement Agreement, attached hereto as Exhibit A, defines the class as:

> All persons who worked as truck drivers for Trans Valley Transport and/or FTU Labor Contractors, Inc. at any time between May 26, 2011 and February 28, 2015 who did not enter into arbitration agreements.

("the Settlement Class"). The original complaint proposed four classes: (1) Truck Drivers Class, (2) Restitution Class, (3) Wage Statement Class, and (4) Terminated Employee Class. Not. of Rem., ECF 1-2, Ex. A., at 5. But these proposed classes have been consolidated for settlement purposes. In its preliminary approval order, the Court conditionally certified the Settlement Class and provisionally appointed Gregory Karasik and Santos Gomez as Class Counsel, Plaintiff Jose Mario Mendoza as class representatives, and Atticus Administration, LLC as the class administrator. ECF 46 at 6-7.

    **B. Terms of Settlement**

Under the terms of the Settlement Agreement, Defendants will pay $700,000.00 into a common settlement fund, without admitting liability. This amount includes attorneys' fees and costs, the cost of class notices and settlement administration, the class representative's service award, but excludes employer's share of payroll taxes. Defendants will pay the employer's share of payroll taxes separately from the Gross Settlement Amount.

### 1. Attorneys' Fees and Costs

Under the Settlement Agreement, Plaintiff's counsel seeks $233,333.33 in attorneys' fees and $13,899.60 in litigation costs. The common settlement fund also includes a provision for $8,300.00 settlement administration costs; and $7,500.00 to be paid to Plaintiff Jose Mario Mendoza as an incentive award in exchange for a general release of all claims against Defendants.

### 2. Class Relief

After deductions from the common fund for fees as modified, costs, and service incentive awards, approximately $436,967.07 will remain to be distributed among the participating class members. Class members will be paid on a pro rata basis depending on the number of work weeks worked during the class period. Dividing this amount across the 154 participating class members yields an average recovery of approximately $2,837.45 per class member. The Agreement provides that no amount will revert to defendant.

### 3. Cy Pres/Remainder

The Settlement Agreement provides that when checks mailed to participating class members are not redeemed or deposited, all the remainder is to be distributed pro rata to class members who cashed their check from the first distribution in proportion to the number of workweeks worked by individuals relative to the total number of workweeks worked by the entire class. No amount of any remainder from the first distribution will revert to defendants. If checks from the second distribution are not deposited or cashed within 90 days of mailing date or January 6, 2025, whichever date is later. The remainder will be donated to the designated cy pres organization, California Legal Assistance, Inc. no later than April 17, 2025, unless otherwise ordered by the Court.

### C. Class Notice and Claims Administration

The Settlement Agreement is being administered by Atticus Administration, LLC. Following the Court's preliminary approval and conditional certification of the settlement, the Class Administrator reviewed a data file from Defense Counsel that contained the name, address, home phone, social security number, and number of weeks worked for 205 individuals who worked as truck drivers for Defendants during the period from May 26, 2011 to February 28, 2015 (the "Class Period") in California. The records of 51 individuals were removed from the file because they did

1  not work as truck drivers during the Class Period. The data file showed those individuals worked
2  "0" workweeks during the Class Period.

3      The Class List was processed through the National Change of Address database maintained
4  by the United States Postal Service (USPS) prior to dissemination of the Class Notice. This service
5  provides address changes for persons who have filed change of address cards with the USPS during
6  the past four (4) years.

7      On June 21, 2024, Notice was sent via U.S. first-class mail to 154 Class Members. The
8  Notice provided Class Members with a summary of the Settlement terms, their options and the
9  deadlines and requirements associated with those options, the released claims, and details on the
10 final fairness hearing. The Notice also provided each Class Member with their eligible number of
11 workweeks according to Defendants' records and their estimated gross Settlement payment.

12     Twenty-six (26) of the 154 Notices were returned to Atticus as undeliverable without
13 forwarding address information. Atticus sent those records to a professional service for address
14 tracing. New addresses were found for 18 records and were not found for eight (8) records. Notices
15 were promptly remailed to the 18 new addresses. All 18 of the remailed Notices were returned to
16 Atticus a second time.

17     Class members were given until August 20, 2024, to object to or exclude themselves from
18 the Settlement Agreement. Out of 154 total class members, no persons filed timely requests to opt
19 out of the Settlement Class. The settlement does not require class members to submit a claim to
20 receive settlement benefits.

21 **II.    FINAL APPROVAL OF SETTLEMENT**

22     **A.    Legal Standard**

23     A court may approve a proposed class action settlement of a certified class only "after a
24 hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements
25 for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need
26 not address whether the settlement is ideal or the best outcome, but only whether the settlement is
27 fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon*
28 *v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). The *Hanlon* court identified the following

factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

**B. Analysis**

**1. The Settlement Class Meets the Prerequisites for Certification**

As the Court found in its order granting preliminary approval and conditional certification of the settlement class herein, the prerequisites of Rule 23 have been satisfied purposes of certification of the Settlement Class. *See* ECF 46.

**2. Adequacy of Notice**

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably

1  calculated, under all the circumstances, to apprise interested parties of the pendency of the action
2  and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr.*
3  *Co.*, 339 U.S. 306, 314 (1950).

4  The Court found the parties' proposed notice procedures provided the best notice practicable
5  and reasonably calculated to apprise Class members of the settlement and their rights to object or
6  exclude themselves. ECF 46. Pursuant to those procedures, the Class Administrator sent U.S. first-
7  class mail notices to all 154 members of the class. Class Administrator perform address tracing for
8  26 notices that were returned as undeliverable. Of those 26 notices, 18 were resent to new addresses
9  but they were all returned to the Class Administrator. Ultimately, 128 mail pieces or 83.12% of the
10 Notices dispersed were successfully mailed.

11 Based upon the foregoing, the Court finds that the Settlement Class has been provided
12 adequate notice.

### 3. The Settlement is Fair and Reasonable

14 As the Court previously found in its order granting preliminary approval, the *Hanlon* factors
15 indicate the settlement here is fair and reasonable and treats class members equitably relative to one
16 another. ECF 46.

17 The reaction of the class was overwhelmingly positive. The Court received 0 objections and
18 0 opt-outs as of the August 20, 2024 deadline. These objections and opt-outs constitute 0.0% of 154
19 class members. "[T]he absence of a large number of objections to a proposed class action settlement
20 raises a strong presumption that the terms of a proposed class settlement action are favorable to the
21 class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation
22 omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received
23 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

24 In its preliminary approval order, the Court approved the proposed plan of allocation. ECF
25 46. That plan is that Class members will receive a Settlement Share based on the number of work
26 weeks worked in the Class Period in California unless they submit a valid and timely Opt-Out Form
27 not later than the date provided on the long-form notice—August 20, 2024. The Court finds the plan

of allocation to be fair and reasonable and to treat class members equitably and therefore approves that plan of allocation.

### 4. Objections

There were no individual objections submitted.

### 5. Other Findings

The parties provided the required notice to federal and state attorneys general under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). ECF 63. Notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d).

### 6. Certification is Granted and the Settlement is Approved

After reviewing all of the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper. The following persons are excluded from the Settlement Class include all persons who timely excluded themselves from the Settlement Class, as identified in Exhibit B hereto.

The cy pres recipient, California Legal Assistance, Inc., is **APPROVED**.

## III. MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

### A. Attorneys' Fees

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

Class counsel requests an attorneys' fee award of $233,333.33. Based on the detailed time records submitted by counsel, the attorneys' fees sought amount to approximately 67% of its lodestar. Defendants do not oppose the fee request.

The Court analyzes an attorneys' fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'"). Under the percentage-of-the-fund method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. When using the percentage-of-recovery method, courts consider a number of factors, including whether class counsel " 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047-50. "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

Using the percentage of recovery method, the Court finds the attorneys' fees sought to be reasonable. The Court has also considered a cross-check using the lodestar method. The lodestar

1    figure is 408.35 hours at $850 per hour for a total of $347,097.50. Plaintiffs claim hourly rates that
2    are commensurate with their experience and with the legal market in this district.

3    Applying the percentage of recovery method, the parties determined the total settlement
4    value to be $700,000. The attorneys' fees requested would come to 33.3% of this total. This amount
5    is greater the 25% benchmark. The Court notes the substantial time this case has been pending, with
6    a majority of the lifetime of the case spent in the state court system. This action presents several
7    unique circumstances. The action was inactive for over 5 years in front of the state court of appeals
8    as parties waited for a hearing date. The action was further delayed in 2020 due to the COVID-19
9    pandemic. Thus, the delays in the action were of no fault of the parties. Further, the action involved
10   unique issues of state law regarding arbitration agreements. After several years in the state court
11   system, the action was removed to federal court on November 15, 2022. On May 17, 2023, Parties
12   agreed to settlement. ECF 27. Thereafter, all efforts were focused on the details of the settlement.
13   The Plaintiff filed a Motion for Settlement and Preliminary Approval on October 10, 2023. ECF 40.
14   Given the unique history of this action, this action is a rare occasion in which the requested
15   attorneys' fees of 33.3% of the total settlement value is reasonable.

16   Based on the foregoing, the Court **GRANTS** an award of attorneys' fees to the amount of
17   $233,333.33.

### B.    Costs Award

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $13,899.60. The Court finds this amount reasonable, fair, and adequate.

### C.    Incentive Award

The district court must evaluate named plaintiff's requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which

United States District Court
Northern District of California

the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, Plaintiff requests incentive award of $7,500. While this incentive award is larger than the typically $5,000 incentive payment for this District, here, the Court finds the incentive award to be appropriate. Plaintiff came forward to represent the interests of 154 others. Plaintiff has devoted an extraordinarily long time to the litigation of his claims against Defendants. It has now been more than nine years since Plaintiff filed his complaint against Defendants in May 2015. Throughout almost a decade, Plaintiff has faithfully remained in contact with his counsel and helped them prosecute this case. Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others. Thus, the Court approves the requested incentive award payment for Plaintiff Jose Mario Mendoza.

### IV. CONCLUSION

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees, costs, and service awards is **GRANTED**. Amounts are fair and reasonable. Settlement was reached with the assistance of Magistrate Judge Virginia DeMarchi. This case presents several unique circumstances that permit an award of attorneys' greater than 25% of the class settlement. Class Counsel is awarded **$233,333.33** in attorneys' fees and **$13,899.60** in litigation costs. Atticus Administration is awarded $**8,300.00** in settlement administration costs. Plaintiff Jose Mario Mendoza is granted an incentive award of **$7,500.00**.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement filed on April 17, 2024 (ECF 46), and this order. This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

The proposed order is hereby adopted, except as modified herein. ECF 57-3.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than **March 13, 2025**, at 3:00 p.m. via video conference.

The Court **SETS** a compliance deadline on **June 12, 2025,** on the Court's 3:00 p.m. calendar via video conference to verify timely filing of the post-distribution accounting.

This Order resolves ECF 53 and 57.

IT IS SO ORDERED.

Dated: October 8, 2024

_____
TRINA L. THOMPSON
United States District Judge

11